**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 24 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

PAULA DARLENE HAMPTON,

Plaintiff,

DEMETRIA COOPER,

Plaintiff-Appellant,

v.

DILLARD DEPARTMENT STORES,
INC.,

Defendant-Appellee,

LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW,

Amicus Curiae.

No. 98-3011

PAULA DARLENE HAMPTON,

Plaintiff-Appellee,

DEMETRIA COOPER,

Plaintiff,

v.

No. 98-3261

DILLARD DEPARTMENT STORES, INC.,

      Defendant-Appellant,

_____

LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW,

      Amicus Curiae.

_____

PAULA DARLENE HAMPTON,

      Plaintiff-Appellee,

DEMETRIA COOPER,

      Plaintiff,

v.                                      No. 98-3306

DILLARD DEPARTMENT STORES, INC.,

      Defendant-Appellant.

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 97-CV-2182-KHV)**

_____

Arthur A. Benson II (Jamie Kathryn Lansford, Jane McQueeny, Gregg Lombardi, and Aften P. McKinney, with him on the briefs) of Arthur Benson & Associates, Kansas City, Missouri, for Cooper and Hampton.

Jack L. Whitacre and Elaine Drodge Koch of Spencer Fane Britt & Browne LLP, Kansas City, Missouri, for Dillard Department Stores.

Julie M. Williamson, Duncan R. Butts, Eric Fisher, Jonathan Goldberg and Ann C. Kiley of McKenna & Cuneo, L.L.P., Denver, Colorado, submitted a brief for Amicus Curiae Lawyers' Committee for Civil Rights Under Law.

---

Before **HENRY** , **ANDERSON**  and **LUCERO** , Circuit Judges.

---

**HENRY** , Circuit Judge.

---

Paula Darlene Hampton filed suit against Dillard Department Stores, Inc. (Dillard's), claiming that the company had unlawfully interfered with her right to make and enforce a contract in violation of 42 U.S.C. § 1981.  A jury awarded her compensatory and punitive damages based on its findings that (1) Ms. Hampton "was entitled to a free cologne sample as a benefit or privilege of her purchase on April 5, 1996," Aplt's App. vol. 1, at 147 (verdict form from phase one of trial); (2) Dillard's "intentionally interfered with [her] ability to receive a free cologne sample," id.; and (3) Ms. Hampton's "race was a motivating factor in [Dillard's] conduct on April 5, 1996."    Id. at 160 (verdict form from phase two of trial). Dillard's thereafter filed a motion for judgment as a matter of law, which the district court denied.  Dillard's now appeals, raising various objections to the district court's denial of its motion.

We review the district court's denial of Dillard's motion for judgment as a matter of law de novo, "applying the same legal standard as the district court." Brown v. Gray, 227 F.3d 1278, 1285 (10th Cir. 2000). A party is entitled to judgment as a matter of law "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." Tyler v. RE/MAX Mountain States, Inc., 232 F.3d 808, 812 (10th Cir. 2000). It is important to note that, "[i]n reviewing the record, *we will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury*. Judgment as a matter of law is appropriate [only] if there is no *legally sufficient evidentiary basis* for a claim under the controlling law. We consider the evidence, and any inferences drawn therefrom, in favor of the non-moving party." Brown, 227 F.3d at 1285 (emphasis added and internal quotation marks omitted).

Thus, Dillard's has a high hurdle to overcome. The focus of Dillard's appeal is on three questions: (1) whether the fragrance coupon was in fact a benefit of Ms. Hampton's purchase; (2) whether there was indeed intentional interference with Ms. Hampton's redemption of the coupon; and (3) whether the interference was in the end based on racial discrimination. We agree with the district court that these are questions of fact, not law, see, e.g., Hampton v. Dillard's Dep't Stores, Inc., 18 F. Supp. 2d 1256, 1265 (D. Kan. 1998) (noting that the issue of discrimination is a question of fact), and the jury made explicit

-4-

findings as to each. On appellate review, we cannot challenge the jury's findings of fact; instead, we may only ask whether there was a "legally sufficient evidentiary basis for a reasonable jury to find for [Ms. Hampton]" on each fact. Fed. R. Civ. P. 50(a). Because there was such a basis, we must affirm the district court's order.

## I. BACKGROUND

The following material facts are taken from the district court's orders below and from the trial transcript. These facts are undisputed, or where disputed, are taken, as we are required to take them, in the light most favorable to Ms. Hampton. We shall first briefly summarize the facts in this case, while we reserve a more detailed description of the evidence for later discussion of specific issues raised by the parties.

On April 5, 1996, Ms. Hampton and her niece, Demetria Cooper, both African-Americans, were shopping for an Easter outfit for Ms. Cooper's one-year-old son in the Dillard's children's department in Overland Park, Kansas. The plaintiffs had four children with them: Ms. Cooper's son, Ms. Hampton's eight-month-old and seven-year-old daughters, and her elder daughter's friend.

Shortly after they entered the store, Tom Wilson, a Dillard's security officer, noticed them. He observed them for more than fifteen minutes. Mr. Wilson testified that he paid close attention to the party, in part, because they had

a stroller with them, because Ms. Cooper had a rolled-up dark cloth item in her hand, and because Ms. Cooper kept looking up at the ceiling and glancing around, as if to check to see if she was being watched. Because his suspicions were aroused, he asked fellow employee Pam Fitzgerel to continue the surveillance in a fitting room in the children's department, where the plaintiffs were trying clothing on Ms. Cooper's one-year-old son. At trial, Ms. Fitzgerel testified that Ms. Cooper was holding a rolled-up cloth item in the fitting room; that she later saw an item under Ms. Cooper's jacket; and that, believing the item to be store merchandise, she contacted Mr. Wilson and told him that she was positive that Ms. Cooper had put something under her coat.

The group left the fitting room and Ms. Hampton proceeded to purchase an outfit for Ms. Cooper's son from the salesclerk in the children's department. When she did so, the sales associate gave Ms. Hampton and Ms. Cooper each a coupon that was redeemable at the fragrance counter for cologne samples. The shopping group then proceeded on to the fragrance counter, which is located where the Dillard's store ends and opens into the Oak Park Mall, to redeem their fragrance coupons.

While the women were in the process of redeeming their coupons and while the women were in a conversation with fragrance consultant Betty Chouteau, Mr. Wilson interrupted them. Referring to Ms. Cooper, he advised Ms. Hampton that

"the . . . black female had been observed placing something in her coat." Aple's Supp. App. at 121 (Dillard's Security Report, dated Apr. 5, 1996). He asked to look inside the Dillard's bag carried by Ms. Hampton, took the bag, and emptied the contents on the fragrance counter. Mr. Wilson checked the items against the receipt and determined that they corresponded. Ms. Chouteau testified that she perceived it to be "a rather embarrassing situation" for the women and, upon Mr. Wilson's intervention, she "turned and started talking to other people." Aplt's App. vol. 3, at 624 (testimony of Ms. Chouteau).

While Mr. Wilson was matching up items to the receipt, Ms. Hampton became visibly upset and told Mr. Wilson that, as a regular customer of Dillard's, she did not appreciate being accused of shoplifting and she did not deserve to be treated this way. Mr. Wilson told her to calm down or he would call the Overland Park police and have her removed from the store. Ms. Hampton asked Mr. Wilson his name and the location of the customer service counter. She then proceeded to the customer service counter and had no more contact with Mr. Wilson. The encounter with Mr. Wilson lasted approximately five minutes. Ms. Hampton and Ms. Cooper subsequently filed suit against Dillard's, alleging false imprisonment under Kansas law and a violation of 42 U.S.C. § 1981.

A. Procedural History

Ms. Hampton and Ms. Cooper based their state tort claims on their

-7-

detention by Mr. Wilson. They based their § 1981 claims on the observation and detention by Mr. Wilson and on the store's disparate security practices of "arresting or detaining African-American shoppers at a significantly greater rate than it arrests or detains white shoppers." Aplt's App. vol. 1, at 5 (complaint). They alleged that their "detention was a part of this pattern or practice." Id.

Following the close of discovery, Dillard's moved for summary judgment on both claims. The district court granted Dillard's summary judgment on the state tort claims and on most of the § 1981 claims. The only § 1981 claim that the district court allowed to proceed to trial was the claim that Dillard's interfered with the plaintiffs' ability to redeem the perfume sample.

The district court noted, however, that whether *Ms. Cooper's* coupon claim was actionable remained in doubt, as the coupon was not received by Ms. Cooper as the result of a purchase but as a benefit of *Ms. Hampton's* purchase. The court ordered Ms. Cooper to show cause why her claims should survive in the absence of any purchase made by her. The court subsequently rejected Ms. Cooper's contention that, as a third-party beneficiary of the sale to Ms. Hampton, her § 1981 claim should survive, and the court in turn dismissed Ms. Cooper's remaining claim on the day before trial.

Noting that our § 1981 jurisprudence requires that the action interfered with must be based on a contract, see Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262,

1267 (10th Cir. 1989) (requiring actual loss of a contract interest for a § 1981 claim for interference with the right to make and enforce a contract),[1] the district court decided to bifurcate the trial. In the first phase, the jury was to determine whether the fragrance sample was a benefit of Ms. Hampton's purchase from Dillard's and whether Dillard's intentionally interfered with the redemption of the coupon. If the jury found the coupon was a benefit of purchase and that Dillard's intentionally interfered, it would proceed to phase two, in which it would determine whether the store's intentional interference was racially motivated. The jury found for Ms. Hampton on all of the issues presented in both phases, and awarded her $56,000 in compensatory damages and $1.1 million in punitive damages. The district court entered judgment in accordance with the verdict and rejected Dillard's Motion for Judgment as a Matter of Law, or Alternatively for a New Trial or Remittitur.

Dillard's now appeals the district court's denial of its motion for judgment as a matter of law and claims that (1) it is entitled to judgment on Ms. Hampton's § 1981 claim because the coupon was not a contract; (2) if the coupon was a contract, there was no interference with a contract interest; and (3) there was no

---

[1] Although our decision in Phelps predated the 1991 amendments to § 1981, these amendments do not alter the requirement of an actual loss of a contract interest. See, e.g., Wesley v. Don Stein Buick, 42 F. Supp. 2d 1192, 1200 n.7 (D. Kan. 1999).

interference with a contract interest based on racial discrimination. Dillard's also appeals the district court's denial of a new trial and contends it was unfairly prejudiced by (1) various instructional errors that misled the jury and (2) various evidentiary admissions and exclusions that were in error. Finally, Dillard's challenges the award of compensatory and punitive damages and the award of attorney's fees.

In addition, Ms. Cooper appeals the district court's dismissal of her § 1981 claim and her state law claim. The Lawyer's Committee for Civil Rights has filed an amicus curiae brief in support of (1) affirmance of the verdict and judgment in favor of Ms. Hampton and (2) reversal of the dismissal of Ms. Cooper's claims. Beginning with the defendant's appeal, we shall review each contention in turn.

## II. CASE NOS. 98-3011, -3261 ANALYSIS

### A. Ms. Hampton's § 1981 Claim

#### 1. Elements of a § 1981 Claim

With respect to 42 U.S.C. § 1981, to establish a prima facie case of discrimination under § 1981,[2] the plaintiff must show:

---

[2] Specifically, § 1981 provides:

> (a) Statement of equal rights
> All persons within the jurisdiction of the United States
> shall have the same right in every State and Territory to

(continued...)

(1) that the plaintiff is a member of a protected class;

(2) that the defendant had the intent to discriminate on the basis of

race; and

(3) that the discrimination interfered with a protected activity as

defined in § 1981.

See Reynolds v. School Dist. No. 1, Denver, Colo., 69 F.3d 1523, 1532 (10th Cir.

1995) ("Section 1981 prohibits racial discrimination in 'the making, performance,

modification, and termination of contracts, and the enjoyment of all benefits,

---

[2](...continued)
> make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection against impairment
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981 (emphasis supplied).

-11-

privileges, terms, and conditions of the contractual relationship.'") (quoting 42 U.S.C. § 1981);  see also  Bellows v. Amoco Oil Co.  , 118 F.3d 268, 274 (5th Cir. 1997) (listing three elements);  Morris v. Office Max, Inc.  , 89 F.3d 411, 413 (7th Cir. 1996) (applying elements to retail transaction).  These elements "are flexible and are not to be applied rigidly."  Cone v. Longmont United Hosp. Ass'n  , 14 F.3d 526, 530 n.2 (10th Cir. 1994).

Typically, most litigation involving § 1981 claims has emanated from the right to make and enforce employment contracts.  Cf. S. Rep. No. 101-315 (1990) (noting that § 1981 was a response to "a series of recent decisions addressing employment discrimination claims" where "the Supreme Court cut back dramatically on the scope and effectiveness of civil rights protections" and that the purpose of the act is "to respond to the Supreme Court's recent decisions by restoring the civil rights protections that were dramatically limited by those decisions");  Morris , 89 F.3d at 413 (noting predominance of § 1981 claims addressing employment discrimination).  However, the statute has been applied to discrimination claims arising in the retail sector and restaurant industry, when a contract has been established.  See, e.g. , Bobbitt v. Rage, Inc.  , 19 F. Supp. 2d 512, 518-20 (W.D.N.C. 1998) (allowing action to proceed where plaintiffs, who were forced to prepay for food in pizza restaurant, demonstrated that the restaurant altered a fundamental characteristic of the food service based on race);

Washington v. Duty Free Shoppers, Ltd., 710 F. Supp. 1288, 1289-90 (N.D. Cal. 1988) (denying summary judgment to defendant where African-American were customers told they needed to show a passport and airline tickets before shopping for duty-paid goods, while other customers were not required to do so).

Applying the prima facie elements to the factual setting of this case, the district court instructed the jury that the plaintiff must establish:

First, that plaintiff was entitled to a free cologne sample as a benefit or privilege of her purchase on April 5, 1996;

Second, that defendant intentionally interfered with plaintiff's right to enjoy the benefits and privileges of that purchase; and

Third that plaintiff's race was a motivating factor in defendant's conduct.

Aplt's App. at 151 (Instruction 18). We will discuss each of these elements, beginning with whether there was interference with a contract.

2. The Coupon as Part of the Purchase Contract

Dillard's appeals the district court's denial of its motion for judgment as a matter of law, first contending that the coupon was not a contract. We review the district court's denial of a motion for judgment as a matter of law de novo, applying the same legal standard as the district court. See Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1268 (10th Cir. 2000). But the legal standard that we and the district court must use is, as noted earlier, difficult for the movant: a party is entitled to judgment as a matter of law only if the

-13-

"evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Id. (internal quotation marks omitted). In reviewing the record, we "will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." Id. Judgment as a matter of law is only appropriate if there is no legally sufficient evidentiary basis for a claim under the controlling law. See id. We consider the evidence, and any inferences drawn therefrom, in favor of the nonmoving party. See id.

Dillard's challenges whether the fragrance coupon was a benefit of Ms. Hampton's contractual relationship for the purchase of children's wear. According to Dillard's, the coupons were promotional invitations, handed out indiscriminately and not exclusively in connection with a purchase. See Aplt's App. vol. 3, at 622, 648, 650, 655, 657. Dillard's maintains that the coupon was a gift and that it was never intended to confer a right upon its recipient. In addition, Dillard's points to Ms. Cooper's receipt of a coupon as evidence that a purchase was not required to receive the gift.

In rebuttal, Ms. Hampton argues that we must be mindful of the jury's appraisal of the credibility of the witnesses as well as the jury's resolution of factual issues. See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1227 (10th Cir. 2000) (noting "[t]he jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony,

-14-

drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact") (internal quotation marks omitted). She and Ms. Cooper testified that, during the time they shopped at the Dillard's store (over an hour), they never saw anyone receive a coupon and saw no one distributing the coupons. The first they saw of the coupons was *after* Ms. Hampton had purchased merchandise. Furthermore, the sales representative from the fragrance company, Ms. Chouteau, testified that the purpose of the promotional coupon, handed out after a customer of Dillard's had made a purchase, was "to entice the shoppers to come to the fragrance [counter] so that we could talk to them about our product." Aplt's App. vol. 3, at 622 (testimony of Ms. Chouteau). All such promotions were supported and agreed to by Dillard's. See id. at 663 (testimony of Ms. Dirks, Dillard's operations manager). Finally, Ms. Cooper testified that, upon receipt of the coupons, the children's wear salesperson directed her shopping party toward the appropriate fragrance counter.

Ms. Hampton contends that she performed the steps necessary to act in compliance with the terms and conditions of the offer from Dillard's: she completed a purchase and presented the coupon to the fragrance counter. The performance of these acts, she argues, either constitutes an acceptance or entitles her to "the enjoyment of all benefits, privileges, terms, and conditions of the

-15-

contractual relationship," as the statute says.

Clearly, the purpose of the statute is to "make it clear that the right to 'make and enforce contracts' free from race discrimination [is] protected by section 1981." S. Rep. No. 101-315 (1990). Furthermore, the list set forth in subsection (b) of the statute, which gives examples of what might constitute the "making" or "enforcing" of a contract" under the Act, "is intended to be illustrative rather than exhaustive." Id. We have clarified "that a § 1981 claim for interference with the right to make and enforce a contract must involve the actual loss of a contract interest, not merely the possible loss of future contract opportunities." See Wesley, 42 F. Supp. 2d at 1200 (citing Phelps, 886 F.2d at 1267).

In the context of a retail transaction, this court has not had the opportunity to address or apply subsection (b). See id. at 1200 & n.8 (citing Morris, 89 F.3d at 413). There is even less guidance as to what constitutes a contract for the purposes of a § 1981 claim involving a retail transaction, and as such, we are authorized to look to common law. See 42 U.S.C. § 1988(a).

Section 45 of the Restatement (Second) of Contracts provides illumination on the common law of contracts regarding an invitation to accept an offer by performance:

(1) Where an offer invites an offeree to accept by rendering a

-16-

performance and does not invite a promissory acceptance, an option contract is created when the offeree tenders or begins the invited performance or tenders a beginning of it.

(2) The offeror's duty of performance under any option contract so created is conditional on completion or tender of the invited performance in accordance with the terms of the offer.

Restatement (Second) of Contracts § 45 (1981). The Comment to § 45 further provides that

[t]his Section is limited to cases where the offer does not invite a promissory acceptance. Such an offer has often been referred to as an "offer for a unilateral contract." Typical illustrations are found in offers of rewards or prizes . . . .

Id. § 45 cmt. a; see also Brown v. State, 602 N.W.2d 79, 88 (Wisc. Ct. App. 2000) (noting that "performance by the entrant of the act requested by the sponsor--there, returning an eligibility card--constitutes an acceptance of an offer and forms a binding contract;" also noting that nearly all jurisdictions have adopted the rule "that contract law governs the sponsor-contestant relationship") (internal quotation marks omitted). Here, Dillard's offered a variance of an option or unilateral contract to Ms. Hampton, and she completed the invited performance in accordance with the terms of the offer. See Restatement (Second) of Contracts § 45; cf. Perry v. Burger King Corp., 924 F. Supp. 548, 552 (S.D.N.Y. 1996) (denying motion to dismiss where customer finished meal and sought to use restaurant's restroom facilities; noting that plaintiff may be

"considered to have contracted for food *and* use of the bathroom" as benefit of contractual relationship).

Dillard's also contends that Ms. Cooper's receipt of a coupon undermines the jury's finding that the coupon was a benefit of Ms. Hampton's purchase contract. We disagree. Ms. Cooper, whose child received the clothing, was a part of the shopping party, and perhaps the store clerk thought Ms. Cooper too should receive the coupon. The jury weighed testimony regarding the receipt of such coupons by nonpurchasing customers and determined that the evidence weighed in favor of Ms. Hampton, i.e., the coupon was a benefit of Ms. Hampton's contractual relationship with Dillard's.

With regard to the purpose of the coupon, Ms. Chouteau testified that it served "to entice the shoppers" to sample her company's products. Aplt's App. vol. 3, at 622 (testimony of Ms. Chouteau). She also stated that coupon holders were "'entitled to'" a fragrance sample. Id. at 625. In addition, we note that the benefit ran to Dillard's as well: to sample those products, the customer would traverse the store, perhaps eyeing other merchandise for purchase from Dillard's. The jury's credibility determinations and conclusion that the coupon conferred a right to a fragrance sample as a benefit of a contractual relationship are not against the weight of the evidence as a matter of law. Whether or not this providing of the sample in hopes that a customer would walk back through the

-18-

store and purchase cologne or another item was itself an option or unilateral contract, we cannot say that the jury's conclusion that the coupon was a benefit of Ms. Hampton's contract with Dillard's was unreasonable.

### 3. Intentional Interference with Redemption of the Coupon

Dillard's also sought judgment as a matter of law because Ms. Hampton suffered no actual loss of a contract right or interest. See Phelps, 886 F.2d at 1267 (emphasizing that actual loss is protected by § 1981, not possible loss); Morris, 89 F.3d at 414-15 ("A claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities.") (citing Phelps, 886 F.2d at 1267). Dillard's contends that Ms. Hampton was not denied a service or product, as required by Morris. At trial, Mr. Wilson testified on behalf of Dillard's that he stopped the women while they were approaching the store's exit and that he did not believe them to be exchanging their coupons for fragrance samples.

A recollection of Mr. Wilson's testimony may explain why the jury and district court reached the decisions that they did:

> Q: What did you think Paula Hampton and Demetria Cooper were doing when you approached them?
> A: They were getting ready to exit the Dillard's store to go out into the mall.
> Q: Okay. Did you notice that they were speaking with a cosmetic associate or a fragrance consultant when you approached the two ladies?

A: No, I did not.
Q: Did you knowingly prevent Paula Hampton from receiving a free cologne sample?
A: No, I did not.

Aplt's App. vol. 3. at 634 (testimony of Mr. Wilson). Thus, we have a trained security guard claiming that he did not notice that the women were redeeming a coupon. Indeed, he did not notice that they were shopping or even talking with a salesperson.

This testimony was directly contested by Ms. Hampton and Ms. Cooper. The jury could have resolved this conflict based on their evidence, but the silver bullet may have been the testimony of Ms. Chouteau, the perfume consultant:

Q: [D]o you recall Paula Hampton and Demetria Cooper and their children coming up to the cosmetics counter?
A: I do.
Q: Do you recall that their discussion with you was interrupted by a Dillard's security officer?
A: Yes, I do.
....
Q: When [O]fficer Wilson came up and spoke, what did you do then?
A: Well, because it was a rather embarrassing situation and because I was very busy with a lot of other things going on, I turned and started talking to other people at the time with my back to them.
Q: With your back to whom?
A: To the officer and Paula. I mean, I just felt like it was an embarrassing situation for them and I felt uncomfortable, you know, watching, so I turned and went ahead and did what I was supposed to be doing.

Aplt's App. vol. 3 at 621-22, 624 (testimony of Ms. Chouteau).

Once again, the evidence in the record is sufficient for the jury to determine

-20-

that Mr. Wilson deliberately interfered with Ms. Hampton's redemption of the coupon and that she suffered an actual loss of a privilege of her contract because of this interruption. Ms. Hampton testified that after he approached her and identified himself while she was at the fragrance counter, Mr. Wilson "took [her shopping] bag, dumped the contents out on the counter, and compared them to the receipt that was in the bag, and then he shoved everything back at [her]." Aplt's App. vol. 3, at 830 (testimony of Ms. Hampton). After this, Ms. Hampton told Mr. Wilson she was shocked to be accused of shoplifting, and Mr. Wilson subsequently threatened to have her removed from the store. See id. at 830-32.

The jury concluded that, had there been no interference, Ms. Hampton would have received the service of [her] redemption of the coupon. As the district court noted, the "plaintiff produced legally sufficient evidence that Wilson intentionally interfered with the redemption of the coupon." Hampton, 18 F. Supp. 2d at 1264. We do not question the jury's credibility determinations, and we cannot say that as a matter of law the jury's conclusion is incorrect. See Deters, 202 F.3d at 1268 ("In our review of the record, we will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury.")

The dissent notes that Mr. Wilson's testimony does not suggest he had the

-21-

subjective intent to prevent the redemption of the coupon.[3]  We agree, but note

that § 1981 protects enjoyment of the benefits of a contract from *any* impairment,

so long as the impairment arises from intentional discrimination.  See 42 U.S.C. §

1981(a) ("All persons . . . shall have the same right . . .  to make and enforce

contracts . . . as is enjoyed by white citizens. . . . ").  Thus the proper focus is on

whether the defendant had the intent to discriminate on the basis of race, and

whether that discrimination interfered with the making or enforcing of a contract.

See Bellows v. Amoco Oil Co., 118 F.3d at 274 (listing three elements of prima

facie case).  We cannot say as a matter of law that the jury's conclusion that

Dillard's had the intent to discriminate on the basis of race was incorrect.

Even under the dissent's suggestion that subjective intent to interfere with a

contract is required, a reasonable juror could find a legally sufficient evidentiary

basis to support such a finding, if it disbelieved Mr. Wilson's testimony.  As to

---

[3]  Although the dissent may be quite correct in observing that the timing of Mr. Wilson's interference was "purely fortuitous," Mr. Wilson's inopportune timing neither alters the resulting interruption of an ongoing transaction nor defeats this § 1981 action.  See Morris, 89 F.3d at 414 (explaining that plaintiffs were stopped after making purchase and claim failed because "[t]hey were neither denied neither admittance nor service, nor were they asked to leave the store"); Wesley, 42 F. Supp. 2d at 1201 (dismissing § 1981 claim because plaintiff unable to point to any evidence in the record that she "intended to purchase a car during her visit"); Lewis v. J. C. Penney Co., 948 F. Supp. 367, 372 (D. Del. 1996) (dismissing § 1981 claim because plaintiff "had done her shopping and was leaving the store" when security guards stopped her) (emphasis added); Robertson v. Burger King, 848 F. Supp. 78, 81 (E.D. La. 1994) (dismissing § 1981 claim where "plaintiff was not denied admittance or service").

the issue of Dillard's intent, the court correctly instructed the jury during the first phase of the trial that Ms. Hampton had the burden of proving by a preponderance of the evidence that "defendant [i.e. Dillard's] intentionally prevented her from redeeming [the] coupon . . . ." Aplt's App. vol. 1, at 139 (Instruction 10). We note that, because "[t]he issue of intent . . . is one that is often not susceptible to direct proof," the jury correctly "consider[ed] all conflicting inferences" that the circumstantial evidence presented. See Washington, 710 F. Supp. at 1289 (citing Rogers v. Lodge, 458 U.S. 613, 618 (1982)). The jury weighed the conflicting testimony and made its credibility determinations, apparently in favor of Ms. Chouteau, who made it clear that Mr. Wilson interrupted an ongoing transaction. As discussed below, the jury concluded there was sufficient indirect evidence of a discriminatory motive on the part of Dillard's and Mr. Wilson. As such, we cannot say that "the evidence points but one way, and is susceptible to no reasonable inferences supporting [Ms. Hampton's] claim." Tyler, 232 F.3d at 816.

4. Racial Discrimination

Dillard's next contends that it deserved judgment as a matter of law because there is no evidence of racial discrimination. In the second phase of the trial, the jury determined that the intentional interference with the contract was racially motivated, and it awarded Ms. Hampton $56,000 in compensatory

-23-

damages and $1,100,000 in punitive damages.

"A plaintiff who lacks direct evidence of racial discrimination may rely on indirect evidence of discrimination. . . ." Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999). As noted above, because the issue of intent is one that is often not susceptible to direct proof, the jury considers all the conflicting inferences that the circumstantial evidence may present. See Washington, 710 F. Supp. at 1289 (citing Rogers, 458 U.S. at 618). In a case where the plaintiff attempts to show intentional discrimination by indirect evidence, the court must employ "the burden-shifting framework first articulated in the seminal case of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)." Perry, 199 F.3d 1134; see also Kendrick v. Penske Transp. Servs., 220 F.3d 1220, 1225 (10th Cir. 2000) (noting that "[a] plaintiff alleging discrimination on the basis of race may prove intentional discrimination through either direct evidence of discrimination (e.g., oral or written statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e., circumstantial) evidence of discrimination").

However, after a full trial on the merits, "the single overarching issue" on which we focus is whether the adverse action was motivated by race. Tyler, 232 F.3d at 812 (setting out approach); Stewart v. Adolph Coors Co., 217 F.3d 1285, 1288 (10th Cir. 2000) (stating that when reviewing sufficiency of the evidence of

a racial discrimination claim, "the burden shifting framework of McDonnell Douglas is largely irrelevant and the issue is whether the adverse employment action was motivated by race"). Thus, the sequential analysis of McDonnell Douglas "drops out" and "our inquiry . . . is whether there was sufficient evidence presented for the jury to infer [Dillard's] reasons were pretextual." Tyler, 232 F.3d at 812 & n.4 (internal quotation marks omitted).

Dillard's contends that Officer Wilson, based on the facts and circumstances, had probable cause to stop Ms. Hampton. However, Dillard's neglects to acknowledge that the jury may have found Mr. Wilson's theory pretextual. [4]

---

[4] Dillard's argues that the district court, in dismissing the plaintiffs' state law claims, determined that Mr. Wilson was credible and that he had probable cause to stop the women; therefore Ms. Hampton is precluded from arguing that Mr. Wilson's probable cause was a pretext for discrimination. But, as the district court noted, "[i]n the instant case the Court did not grant Dillard's summary judgment on plaintiff's § 1981 claim, and the Court's probable cause finding at summary judgment was not determinative of the § 1981 claim." Hampton, 18 F. Supp. 2d at 1266. Although the stop may have complied with state law, "[o]f course, compliance, or the lack of compliance with a state statute is not the yardstick against which to assess a claimed federal constitutional violation." Tenenbaum v. Williams, 907 F. Supp. 606, 618 (E.D.N.Y. 1995); see also Alexis v. McDonald's Restaurants of Mass., 67 F.3d 341, 354 (1st Cir. 1995) (even assuming state actor had probable cause to initiate stop, plaintiff "tender[ed] competent evidence that a state actor intentionally discriminated against her because she belonged to a protected class"); Tanner v. Heise, 879 F.2d 572, 580 n.5 (9th Cir.1989) (noting that law officers' "mere compliance with the procedural requisites of state law would not shield them from liability under section 1983").

(continued...)

-25-

"The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination."

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)). As noted above, the jury's conclusions indicate it did not find Mr. Wilson's testimony credible.[5] Thus, "[o]ur holding is further fortified by our conclusions that the jury could reasonably infer all [defendant's] previous justifications were pretextual. If the jury found, as a whole [Mr. Wilson] was not credible, its decision to reject [his] proffered reason . . . is, likewise, reasonable." Tyler, 232 F.3d at 816.

Ms. Hampton relies primarily on indirect evidence of discrimination. In its memorandum in support of its motion for judgment as a matter of law before the district court, Dillard's defends its security policies as "racially neutral," Aplt's App. vol. 1, at 182, and contends that there was no evidence that the store's employees had a history of denying services or products to African-American

---

[4](...continued)

[5] We recognize that on summary judgment the district court found no reason to doubt Mr. Wilson's credibility, but the district court did not have the opportunity to weigh Ms. Chouteau's testimony beyond that provided in her affidavit. As noted above, Ms. Chouteau's conflicting testimony may very well have been the decisive factor that tipped the scales in favor of Ms. Hampton.

-26-

customers. Dillard's fails to acknowledge that the evidence of discriminatory surveillance, although on its own not actionable under § 1981, see Lewis, 948 F. Supp. at 370 (rejected plaintiff's theory of "an unstated, unwritten contract between commercial establishments and the public, that all who enter premises of the former will be treated equally regardless of race" because it would virtually nullify the contract requirement of § 1981), can certainly be viewed as indirect evidence of discrimination. See Hall v. Pennsylvania State Police, 570 F.2d 86, 92 (3d Cir. 1978) (stating that policy to photograph African-American customers of bank "was not the isolated act of an individual employee, but rather the implementation of a policy deliberately adopted by the bank management to offer its services under different terms dependent on race"); Washington, 710 F. Supp. at 1289 (denying defendant's motion for summary judgment where policy of denying services to "suspicious" shoppers targeted African-Americans and stating that "[t]he issue of intent . . . is one that is often not susceptible to direct proof, and a court should consider all conflicting inferences that may be presented by the circumstantial evidence in the case").

Ms. Hampton presented multiple forms of indirect evidence of discrimination. She presented testimony from former Dillard's security officers that corroborated the racial surveillance theory. She also presented testimony that African-Americans were frequently "tracked" upon entering the store; that

-27-

Dillard's implemented race "codes" that highlighted African-American shoppers as suspicious; that African-Americans were singled out as "suspicious" for returning merchandise without a receipt or for moving between departments while carrying merchandise.    See Aplt's App. vol. 3, at 745-46, 751, 765-68, 781-85.  In addition, store incident reports differentiated shoppers predominantly by race.  As to Ms. Hampton specifically, she was noticed and placed under surveillance shortly after entering Dillard's.  The district court also noted that Mr. Wilson's "Security Report," despite being less than two pages long, reiterated Ms. Hampton's race twelve times, reflecting implementation of the store's policy and reflecting Mr. Wilson's motivation.  Given this abundant evidence, we agree with the district court and hold that the jury's inference of racial discrimination was a reasonable one.

Finally, Dillard's and the dissent strenuously argue that there is no direct evidence or indication that Mr. Wilson acted with an intent to discriminate.  As discussed above, the fact that Mr. Wilson has not admitted discrimination, however, does not mean there is no evidence of discrimination.  See Washington, 710 F. Supp. at 1289  (rejecting argument that because no employee "admitted in his or her deposition that he or she was discriminating and no store documents reveal discriminating intent, then there is no evidence that they discriminated against plaintiffs" because plaintiffs testified that they "believe[d] they were

-28-

discriminated against by the store"). As previously noted, there was ample evidence (most tellingly, Mr. Wilson's security report, which reiterated the race of the shoppers a dozen times, and testimony presented to the jury regarding the store's discriminatory coding practices) for the jury to determine that "race was a motivating factor" in Mr. Wilson's interaction with Ms. Hampton. Aplt's App. vol. 1, at 151 (Instruction 18). We therefore hold Ms. Hampton presented sufficient evidence that the reasons given by Mr. Wilson for interference with Ms. Hampton's redemption of the contract were pretextual, and the jury reasonably inferred that Dillard's intentionally discriminated against her on the basis of race. See Tyler, 232 F.3d at 816 (reiterating that judgment as a matter of law is appropriate only if "the evidence points but one way, and is susceptible to no reasonable inferences supporting [plaintiff's] claim").

### 5. Instructions

Dillard's next appeals the district court's denial of its motion for a new trial on the grounds that the district court's instructions were unfairly prejudicial. We review the trial court's denial of a motion for a new trial on the basis that the jury's verdict is against the weight of the evidence for "a manifest abuse of discretion." Blanke v. Alexander, 152 F.3d 1224, 1235 (10th Cir. 1998); see also Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 433 (1996) (noting that a federal trial court has "discretion to grant a new trial if the verdict appears to [the

court] to be against the weight of the evidence") (internal quotation marks omitted). There is an abuse of discretion when "the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence." Black v. Hieb's Enters., Inc., 805 F.2d 360, 363 (10th Cir. 1986).

Dillard's argues that the district court's instructions confused the jury as to the burden of proof and misdirected the focus of the jury's inquiry. On review, "[w]e consider jury instructions in their entirety, applying *de novo* review to determine whether the jury was misled on the applicable law." Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1250 (10th Cir. 2000). "Despite this standard of review, we do not require perfection, but we must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them." Id. (internal quotation marks omitted).

a. Instructions 10 and 17.

In phase one of the trial, Instruction 10 set out Ms. Hampton's claims:

> Plaintiff Paula Hampton claims that defendant Dillard Department Stores, Inc., violated her civil rights under 42 U.S.C. § 1981 by intentionally denying her the right to enjoy all benefits and privileges of her contractual relationship with Dillard's, on account of her race. More specifically, plaintiff contends that defendant intentionally prevented her from redeeming a free cologne coupon which Dillard's had given her as a benefit of a purchase in its children's department.

> Ms. Hampton has the burden of proving by a preponderance of the evidence that her claims are more probably true than not true.

-30-

Dillard's denies plaintiff's claims and contends that the cologne sample was a free gift, available to all store patrons, rather than a benefit with purchase.

Aplt's App. vol. 1, at 139 (Instruction 10). In phase two of the trial, the district court stated that the phase one instructions applied to the jury's deliberations, with the exception of Instruction 10. Instead, Instruction 17 set out Ms. Hampton's claims, but in a slightly different context:

Plaintiff Paula Hampton claims that defendant Dillard Department Stores, Inc., violated her civil rights under 42 U.S.C. § 1981 by intentionally denying her the right to enjoy all benefits and privileges of her contractual relationship with Dillard's on account of her race. More specifically, plaintiff contends that defendant's surveillance, detention and search of her belongings constituted a security practice which unequally burdened her as an African-American shopper.

Ms. Hampton has the burden of proving by a preponderance of the evidence that her claims are more probably true than not true.

Dillard's denies plaintiff's allegations.

Id. at 150 (Instruction 17). Dillard's contends that because the above instructions focused the jury on its unrelated prior bad acts, Dillard's was unfairly prejudiced.

We hold that Instruction 17 refocused the jury: in phase one, the jury was to focus on whether the coupon was a contract and whether Dillard's intentionally interfered; in phase two, the jury's primary focus was to determine whether Dillard's acted with a discriminatory motive. The instruction echoed the pretrial

order's characterization of Ms. Hampton's claims– i.e., that Dillard's engaged in disparate surveillance practices that unequally burdened African-American shoppers and violated Ms. Hampton's rights under § 1981. To allow the jury to consider the store's past conduct and practice as *indirect* evidence was not error. These instructions did not mislead the jury. To the contrary, the instructions clearly stated the correct legal standard.

>     b. Instruction 18.

Dillard's also contends that Instruction 18 further confused the jury, because it suggested that Ms. Hampton's race could be one of several motivating factors behind Dillard's conduct, rather than the determinative factor. Instruction 18 presented the essential elements that Ms. Hampton had to prove to establish her claim of race discrimination under § 1981:

> In order to establish her claim of race discrimination under 42 U.S.C. § 1981, plaintiff must prove the following essential elements are more probably true than not true:
>
> First, that plaintiff was entitled to a free cologne sample as a benefit or privilege of her purchase on April 5, 1996;
>
> Second, that defendant intentionally interfered with plaintiff's right to enjoy the benefits and privileges of that purchase; and
>
> Third, that plaintiff's race was a motivating factor in defendant's conduct.
>
> Because you have already resolved the first two issues in favor of plaintiff, you need only address the third element. On this issue,

-32-

plaintiff does not have to prove that defendant was motivated only by plaintiff's race, but she must prove that her race was a motivating factor in defendant's decision, that is, that defendant acted, at least in part, because of plaintiff's race.

A "motivating" factor means that but for its unlawful motive, defendant would not have denied plaintiff the right to enjoy the benefits and privileges of her purchase. In other words, you must find that race was at least one of the factors which motivated Officer Wilson to interfere with plaintiff's redemption of the cologne sample. A motivating factor need not be the sole or exclusive reason, however, for Wilson's actions.

While plaintiff must show that defendant intentionally discriminated against her, she is not required to produce direct evidence of intentional discrimination. Intentional discrimination may be inferred from the existence of other facts and may be inferred from showing that defendant's explanation is unworthy of belief.

If plaintiff proves her claim by a preponderance of the evidence, you must return a verdict in favor of plaintiff. If plaintiff does not prove her claim by a preponderance of the evidence, you must decide this claim in favor of defendant.

Aplt's App. vol. 1, at 151-52 (Instruction 18).

Instruction 18 merely restated § 1981's elements and recited the jury's verdict from the first phase of the trial: that Ms. Hampton was entitled to a free cologne sample as a benefit of her purchase and that Dillard's intentionally interfered with her ability to receive a free cologne sample. See id. at 147 (verdict form from phase one of trial). The instruction properly stated that the plaintiff bears the burden of establishing that race was a motivating factor in the defendant's decision to discriminate. See Anaeme v. Diagnostek, Inc., 164 F.3d

-33-

1275, 1282 (10th Cir. 1999) (noting it is "[p]laintiff's ultimate responsibility [to] persuad[e] the jury that race was a motivating factor in the employment decision").    Because we consider jury instructions as a whole in connection with all other instructions given,    see Hall v. Western Prod. Co.   , 988 F.2d 1050, 1058 (10th Cir. 1993) ("The appellate court reviews the jury instructions as a whole, not by reviewing single jury instructions."), we hold defendant's argument that Instruction numbers 17 or 18  misled the jury to be without merit.

c. Instruction 19.

Dillard's further argues that the court erroneously instructed the jury to focus on its discriminatory practices when making its apportionment of actual damages.   In part, Instruction 19 stated that "[t]he burden is on [the] plaintiff to prove by a preponderance of the evidence the existence and amount of her damages and the fact that defendant's unlawful conduct proximately caused her damages." Aplt's App. vol. 1, at 153.  Dillard's contends that the jury's consideration of all of its "unlawful conduct" would include Dillard's allegedly discriminatory surveillance tactics and consequently distorted the award.  Because Dillard's did not preserve this issue for review, we review for plain error.     See Unit Drilling Co. v. Enron Oil & Gas Co.    , 108 F.3d 1186, 1190 (10th Cir. 1997). In order to find plain error we would have to conclude that the instruction was "patently plainly erroneous and prejudicial."     Id. (internal quotation marks

-34-

omitted).  We doubt whether this instruction was error, and even if it were, we also doubt that the error would be "patently plainly erroneous and prejudicial." Id.  We therefore hold that the jury was properly instructed as to the damages it could award and that the instructions did not allow the jury to consider impermissible theories.

d. Proposed Instructions Regarding Summary Judgment.

Finally, Dillard's argues that the district court erred by refusing to give a proposed instruction regarding the district court's grant of summary judgment to Dillard's on the plaintiffs' false imprisonment claims.  Specifically, Dillard's contends that the district court's summary judgment ruling conclusively established that Mr. Wilson acted with probable cause when he stopped Ms. Hampton and Ms. Cooper and that he stopped them at the nexus of the store and the mall.

"Under Rule 56(d), summary adjudication of only some of the claims imposes a duty on the trial court to 'if practicable' articulate what facts are established and which remain controverted."  Anixter v. Home-Stake Prod. Co., 977 F.2d 1533, 1548 (10th Cir. 1992).  Here, the district court granted summary judgment to Dillard's on the false imprisonment claims and a subset of the § 1981 claims, but allowed the § 1981 claim based upon the coupon to proceed.  We agree with the district court that "that record is different from the record which

[was developed before trial on the coupon claim] and the Court's summary judgment order is immaterial." Aplt's App. vol. 4, at 1184 (Tr. of instruction conference).

As noted above, even if the stop complied with state law, Dillard's is not necessarily shielded from liability under § 1981. See Tanner, 879 F.2d at 580 n.5 ("mere compliance with the procedural requisites of state law would not shield [officers] from liability under § 1983"). Furthermore, there were no findings in the summary judgment order as to Mr. Wilson's subjective beliefs and the store's policies allegedly based on them.

Section 1981 is a unique and powerful statute that focuses on motivation behind a particular action. Whether Mr. Wilson committed a state tort in his fruitless search of Ms. Hampton's belongings is not dispositive of why he targeted her in the first place. For those reasons, the jury was entitled to consider, along with Mr. Wilson's testimony, the testimony of Ms. Chouteau, Ms. Hampton and Ms. Cooper, and the demonstrative evidence. The district court's instruction properly stated the law regarding the issues before the jury and the district court did not abuse its discretion when it refused to give the store's proposed instruction.

6.  Admission of Irrelevant and Prejudicial Evidence/Exclusion of Exculpatory Evidence

-36-

Dillard's also sought a new trial arguing that the cumulative effect of the district court's erroneous evidentiary rulings merits a reversal. We review evidentiary rulings for an abuse of discretion. See Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995). The store's argument centers around the contention that Ms. Hampton's § 1981 claim was exceedingly narrow and therefore the admission of testimony regarding surveillance tactics and loss prevention practices was prejudicial and confusing to the jury.

Dillard's relies upon a continuing objection to opinion testimony about racism by the officer witnesses. The record does not indicate that Dillard's objected to all of the challenged testimony at trial. A party must make a timely and proper objection to preserve an alleged error for appeal. See United States v. Herndon, 982 F.2d 1411, 1414 (10th Cir. 1992). Failure to so object "constitutes waiver of the issue unless there is plain error resulting in manifest injustice." Id. at 1414-15. Whether under an abuse of discretion or plain error review, we conclude that there was no error.

Dillard's focuses on several areas of allegedly prejudicial testimony: (1) testimony that Officer Wilson's supervisor used racial epithets in his previous position as director of security for another employer, (2) testimony by former Dillard's security officers as to training they received regarding treatment of minority shoppers; (3) testimony regarding the racial makeup of Dillard's

-37-

shoppers and shift logs and arrest reports; (4) lay opinion testimony about Dillard's security officers; and (5) testimony that dated back approximately twenty years as to Officer Wilson's disciplinary proceeding and suspension. In addition, Dillard's contends that the court erred when it excluded Ms. Hampton's handwritten complaint that she filed with the customer service department after the incident.

The first three alleged evidentiary errors, taken separately or in the aggregate, do not warrant reversal. The use of racial epithets by Mr. Wilson's former supervisor, training practices of the store, its shift incident logs and arrest reports may be viewed as indirect evidence of discriminatory animus. As previously stated, "a § 1981 plaintiff alleging racial discrimination may prove intentional discrimination through either direct or circumstantial evidence." Tyler, 232 F.3d at 812. Dillard's had every opportunity to rebut all of the above admitted evidence but instead relied upon its "continuing objection" to all opinion testimony not rationally based on personal knowledge. Aplt's. App. vol. 3, at 713. We hold that the district court did not abuse its discretion.

As to the testimony regarding Officer Wilson's suspension from the Kansas Highway Patrol for falsifying a report in 1977, the district court determined that although the event was remote in time, because it was probative of Mr. Wilson's character for truthfulness, and because Mr. Wilson was able to explain the

-38-

incident, the court would allow the questioning. The district court did not abuse its discretion in allowing this line of questioning and in allowing the jury to give it appropriate weight. Federal Rule of Evidence 608(b) provides: "Specific instances of the conduct of a witness . . . may, . . . in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . ." Fed. R. Evid. 608(b). One key aspect of this rule is that its application is explicitly within the discretion of the district court. The court did not abuse its discretion.

Finally, Dillard's contends that the district court erred when it excluded Ms. Hampton's written complaint to the store, made immediately after her interaction with Mr. Wilson. Dillard's alleges that the report was an admission against Ms. Hampton's interest, it closely tracked Mr. Wilson's story, and made no intimation of racial discrimination. The record indicates that Dillard's counsel planned to offer specific facts that were admissions against interest in the report. In fact, Dillard's counsel was able to cross-examine Ms. Hampton thoroughly about the written complaint. Furthermore, Ms. Hampton testified that nothing in the complaint suggested that she believed the interference with her redemption of the coupon was racially motivated. See Aplt's App. vol. 3, at 837 (testimony of Ms. Hampton). We hold that Dillard's was not prejudiced by the exclusion of the complaint.

Dillard's also contends the cumulative effect of the errors they appeal unduly prejudiced their case. As we have found no error, there can be no compound effect.

7. Damages

a. Compensatory Damages

Dillard's contends that the compensatory damages award of $56,000 is not supported by the evidence and must be set aside. When a party complains there was insufficient evidence to support a damage award, we must determine whether the damage award is supported by substantial evidence. See Baty v. Willamette Indus., 172 F.3d 1232, 1243 (10th Cir. 1999). We view the evidence in the light most favorable to the prevailing party. See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1551 (10th Cir. 1996).

Dillard's states that any emotional damages Ms. Hampton suffered resulted from Mr. Wilson's belief that her niece was shoplifting and not from any alleged § 1981 interference with her contract. In addition, Dillard's contends that Ms. Hampton's emotional distress, if any, is unsupported by the record.

Ms. Hampton counters that the damages from the accusation and interference with the contract were substantial: she felt humiliated and disgraced by the accusations. Clearly the accusation, though directed at her niece, implicated her as part of the entourage in the dressing room. In addition, Ms.

Hampton claims that she, too, was accused of stealing. She contends that her emotional damages were immediately evident, as she was visibly upset after the incident, as well as lasting, as she is now unable to shop with her children for fear of future ridicule and humiliation. Ms. Hampton also claimed her daughter had repeated nightmares regarding the incident.

We note first that any economic damage that resulted from the store's intentional interference with the redemption of the fragrance sample was negligible. Our review of compensatory damages is limited to Ms. Hampton's testimony regarding her emotional suffering. See Karnes v. SCI Colo. Funeral Servs., 162 F.3d 1077, 1080 (10th Cir. 1998) (noting availability of compensatory and punitive damages under § 1981). Ms. Hampton testified as to her emotional distress and that of her daughter. See Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998) (noting that, in a § 1981a discrimination case, victim's "testimony of anxiety, sleeplessness, stress, marital hardship and loss of self-esteem was sufficiently detailed to preclude us from holding that the district court abused its discretion in its award of compensatory damages"). Ms. Hampton's testimony here was similarly detailed. As the district court noted:

> [I]n this case plaintiff gave eloquent and emotionally moving testimony that Wilson disgraced and humiliated her, in front of her children, that she was too emotionally distraught to drive, and that she had to call her husband for a ride home. Immediately after the incident she was crying and she was so upset that she could not write

-41-

out a customer comment card, and a Dillard's employee filled it out for her. She testified that "I don't feel that my life will ever be the same." The jury was entitled to credit this testimony and to compensate plaintiff accordingly.

Hampton , 18 F. Supp.2d at 1275-76 (citations omitted). We conclude that the award of compensatory damages was well within the district court's discretion.

b. Punitive Damages

Dillard's also seeks to reduce or eliminate the $1.1 million punitive damage award. Dillard's argues that there was insufficient evidence for the jury to conclude that the defendant discriminated against plaintiff willfully or maliciously, which is required for an award of punitive damages under § 1981. See EEOC v. Gaddis , 733 F.2d 1373, 1380 (10th Cir. 1984). It also asks us to conclude as a matter of law that the punitive damage award is excessive.

(1) Award of Damages

"In the Tenth Circuit, the standard for punitive damages for discrimination in violation of federal civil rights is that the discrimination must have been 'malicious, willful, and in gross disregard of [plaintiff's] rights.'" Jackson v. Pool Mortgage Co. , 868 F.2d 1178, 1181 (10th Cir. 1989) (quoting Gaddis , 733 F.2d at 1380). "'The allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such

-42-

damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact.'" Gaddis , 733 F.2d at 1390 (internal quotation marks omitted).

Based on the testimony presented, the jury could reasonably find that Dillard's took part in the intentional discriminatory conduct. See id. at 1379 (holding that trial court's finding of intentional discrimination was correct and noting that "[w]here the evidence supports a conclusion either way the choice between two permissible views of the weight of the evidence is not clearly erroneous") (internal quotation marks omitted). The jury found Ms. Hampton's witnesses credible. The jury also weighed testimony regarding the store's training policies, its incident reports, its close observation of African-American customers who were engaging in objectively innocent behavior, and its arrest reports. The jury's findings as a whole are sufficient to establish that the discrimination by Dillard's, acting through Mr. Wilson, was malicious, willful, and in gross disregard of Ms. Hampton's rights. We will not disturb the decision to award punitives.

(2) Amount of Damages

Dillard's also argues that the severity of the punitive damage award violates its constitutional right to due process. "One must receive fair notice both that certain conduct will subject him to punishment, and the possible severity of

-43-

the punishment that may be imposed." Deters, 202 F.3d at 1272 (affirming punitive damage award for sexual harassment claims pursued under Title VII). The Supreme Court has outlined three guideposts to determine whether a defendant has received fair notice. See BMW of N. Am. v. Gore, 517 U.S. 559, 574-75 (1996). "First, and most important, is the reprehensibility of [the] defendant's conduct." Deters, 202 F.3d at 1272. Next is the ratio of the punitive damage award to the compensatory damage award. See id. at 1272. Third is the measure of the punitive damage award in relation to awards for comparable misconduct. See id. We also must keep in mind the deterrent goal of punitive damages in conjunction with the impact the size of the award will have on a defendant and with the wealth and size of the defendant as relevant factors. See id.

The availability of punitive damages under § 1981 is well established. See Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 459-60 (1975) ("[Section] 1981 affords a federal remedy against discrimination in private employment on the basis of race. An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages."). Applying the three factors–reprehensibility, ratio, and comparability–to this case, we are unpersuaded by the store's arguments. Dillard's had ample notice it was subject to punitive

-44-

damages for conduct that was malicious, willful, and in gross disregard of plaintiff's rights.

### a. Reprehensibility

Dillard's argues that it is authorized to engage in reasonable loss prevention activity and that, during the five-minute episode, Ms. Hampton was "free to leave" at any time. Aplt's Br. at 46. Dillard's suggests that the reprehensibility of its conduct is further minimized because Ms. Hampton "had shopped at Dillard's hundreds of times, but was stopped only this once." Id. Finally, Dillard's purports its surveillance tactics involved no verbal or physical abuse, and thus are inappropriate for punitive damages.

As discussed above, the jury was presented with evidence about the coding and close surveillance of African-American shoppers. The jury must have agreed with Ms. Hampton that the store's surveillance tactics are particularly reprehensible.

### b. Ratio

Dillard's next contends that the punitive damages ratio of approximately 20 to 1 is impermissibly excessive and unconstitutionally disproportionate. Dillard's relies primarily on the BMW Court's admonitions regarding economic damage cases, where a ratio of 10:1 was cited with approval. See BMW, 517 U.S. at 581 (citing TXO Prod. Corp. v. Alliances Resources Corp., 509 U.S. 443, 460-462

-45-

(1993)). Ms. Hampton counters that in cases where "'the injury is hard to detect [and] the monetary value of noneconomic harm . . . [is] difficult to determine,'" a higher ratio of punitive damages to compensatory damages is justified.      Bielicki v. Terminix Int'l Co.  , 225 F.3d 1159, 1166 (10th Cir. 2000) (quoting      BMW, 517 U.S. at 583).

As stated above, the economic injury suffered here was nominal, but the actual injury is more difficult to quantify.  "[B]oth the Supreme Court and this court acknowledge that low awards of compensatory damages may support a higher ratio if a particularly egregious act has resulted in a small amount of economic damages.  Additionally, . . . where the injury is primarily personal, a greater ratio [than 10:1] may be appropriate."      Deters , 202 F.3d at 1273 (citations omitted).  Looking at the harm that might result from the store's conduct in relation to the harm that actually occurred,      see BMW, 517 U.S. at 581, and eschewing mathematical formulae,     see id. at 582, we hold that the punitive damage award in this case is justified.      See United States v. Big D Enters., Inc.    , 184 F.3d 924, 934 (8th Cir. 1999) (upholding maximum punitive damages award in Fair Housing Act case and stating that "[t]he punitive damage award in this case . . . reinforces the nation's commitment to protecting and preserving the civil rights of all");  see also  Deters , 202 F.3d at 1273 (stating that "[w]e are not persuaded that the ratio between compensatory [damages of $5,000] and punitive

-46-

damages [of $295,000 as adjusted under Title VII] . . . is unconstitutionally disproportionate”).

### c. Sanctions for Comparable Misconduct

The third prong of inquiry further supports our holding. Section 1981 does not have a statutory cap that limits punitive damages as does Title VII. See 42 U.S.C. § 1981a(b)(1). As stated above, few § 1981 claims involve retail transactions, and fewer reach trial. We thus consider whether the award would “shock the judicial conscience, and constitute a denial of justice.” Deters, 202 F.3d at 1273 (internal quotation marks omitted). Dillard's does not argue that the award would “result in [its] financial ruin” or that the award is a disproportionally large percentage of its net worth. Luciano v. Olsten Corp., 110 F.3d. 210, 221 (2d Cir. 1997) (internal quotation marks omitted); see also Deters, 202 F.3d at 1273 (affirming punitive damages award with ratio of 59 to 1 in a sexual harassment case); Big D Enters., 184 F.3d at 933 (noting that, in weighing BMW factors, “the reprehensibility of [defendant's] conduct more than justifies the punitive damage award”). Because the reprehensibility of the store's conduct as found by the jury was particularly offensive, and the resulting punitive damage award was therefore reasonable, we conclude that the district court did not err in refusing to reduce the punitive damage award.

**B. Ms. Cooper's § 1981 Claim**

On appeal, Ms. Cooper seeks reversal of the district court's grant of summary judgment to Dillard's on her § 1981 action. She contends that (1) receipt of the coupon from the Dillard's clerk created a promise owed to her; or, alternatively, (2) she is a third-party beneficiary of the contract between Ms. Hampton and Dillard's and, as such, is entitled to redemption of the coupon. She also asserts that the district court improperly resolved credibility and intent issues when it granted summary judgment to Dillard's.

### 1. Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard as the court below." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In applying this standard, we examine the factual record and draw reasonable inferences therefrom in a light most favorable to the nonmoving party." Munoz, 221 F.3d at 1164.

### 2. The Coupon as a Contract Between Ms. Cooper and Dillard's

We agree with the district court that Ms. Cooper's receipt of the coupon did not establish a contractual relationship between Ms. Cooper and Dillard's. In this

regard, we refrain from adopting Amicus Curiae's (Lawyers' Committee for Civil Rights Under Law) expansive interpretation that § 1981 broadens the scope of relevant civil rights and protects customers from harassment upon entering a retail establishment. Although Amicus Curiae proposes an arguable application, § 1981 is limited to remedy "any act of discrimination committed in the making or the performance of a contract." 137 Cong. Rec. S15483 (daily ed. Oct. 30, 1991) (statement of Sen. Danforth). We note that the statute's formulations are not "exhaustive," H.R. Rep. No. 102-40(II), at 37 (1991), and a broader interpretation might discourage intolerable harassment in the retail setting based on unfounded racial biases. But we cannot extend § 1981 beyond the contours of a contract. We are aligned with all the courts that have addressed the issue that there must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping. See Morris, 89 F.3d at 415 (noting that, where claim was interference with prospective contractual relations, "[w]hile the incident . . . was unfortunate and undoubtedly disconcerting and humiliating, it does not constitute a violation of the statutes"); Wesley, 42 F. Supp. 2d at 1201 (granting summary judgment where there was no evidence "that plaintiff would have attempted to purchase a car from the dealership if the agents had not chased her away"); Sterling v. Kazmierczak, 983 F. Supp. 1186, 1192 (N.D. Ill. 1997) (granting defendant's motion to dismiss where plaintiff failed to

allege that he was prepared to purchase air rifle cartridges or that he had them "in hand" when confronted by police officer); Lewis, 948 F. Supp. at 371 (granting summary judgment to defendants and rejecting theory that an unwritten contract between commercial establishments and the public guarantees that whenever a member of the latter enter "premises of the former [she] will be treated equally regardless of race"); Robertson, 848 F. Supp. at 81 (dismissing claim where "plaintiff was not denied admittance or service"); cf. Bobbitt, 19 F. Supp. 2d at 519 (denying defendant-restaurant's motion to dismiss where plaintiffs alleged that restaurant required plaintiffs to prepay, thereby changing an essential term of the customer/restauranteur contract because of race).

Because there is no dispute as to a material fact regarding Ms. Cooper's failure to make or attempt to make a purchase at Dillard's, we hold that the district court correctly dismissed Ms. Cooper's claims as a matter of law.

3. Third-Party Beneficiary

In the alternative, Ms. Cooper argues that, as the recipient of the purchased clothing and as a part of the shopping party, her receipt of the coupon conferred upon her the status of a third-party beneficiary. We disagree.

"A contract is a stipulation *pour autrui* [for others] if it clearly reveals that the intent of the contracting parties was to provide a benefit to a third party." Wallace v. Texaco, Inc., 681 F.2d 1088, 1090 (5th Cir. 1982). Ms. Cooper's

presence at the register was fortuitous and, as noted above, her receipt of the coupon from the sales clerk did not dilute Ms. Hampton's § 1981 claim. However, an incidental benefit is not enough to confer contractual rights under the contract; there must also be consideration for the contract. See id. ("The benefit to the third party must be more than merely incidental to the contract; it must be part of the condition or consideration for the contract.").

The "[p]erformance of a contract will often benefit a third person. But unless the third person is an intended beneficiary . . . , no duty to him is created." Restatement (Second) of Contracts, § 302 cmt. e. An incidental beneficiary is a person who will be benefitted by performance of a promise but who is neither a promisee nor an intended beneficiary. See Holbrook v. Pitt, 643 F.2d 1261, 1270 (7th Cir. 1981) (noting that, under federal common law, "[i]f the agreement was not intended to benefit the third party, however, he is viewed as an 'incidental' beneficiary, having no legally cognizable rights under the contract").

Undoubtedly, Ms. Cooper, as a third party, derived some benefit from the contract between Ms. Hampton and Dillard's. This derivation of benefit does not, however, automatically render the contract a third-party beneficiary contract, as it reaches beyond the intent of the contracting parties. Ms. Cooper was simply an incidental beneficiary. See id. Merely because she may have derived a benefit, purely incidental and not contemplated by the contract between Ms. Hampton and

-51-

Dillard's, does not entitle her to sue to enforce the contract.

### 4. Credibility and Intent

Lastly, Ms. Cooper contends that the district court prematurely disposed of her § 1981 claim and her state law false imprisonment claim and made credibility and factual determinations that should have been made by the jury. As to her § 1981 claim, there is no legitimate factual dispute as to whether Ms. Cooper attempted to purchase an item from Dillard's. Because we have held as a matter of law that Ms. Cooper is not a third-party beneficiary of the contract between Ms. Hampton and Dillard's, her claim as to outstanding credibility determinations raises no material facts.

As to her false imprisonment claim, we agree with the district court that Mr. Wilson's statement to Ms. Hampton that she needed to calm down or he would call the Overland Park Police, does not constitute false imprisonment. See Thompson v. General Fin. Co., 468 P.2d 269, 280 (Kan. 1970) (listing elements of false imprisonment claim); see also Wright v. Montgomery Ward & Co., 814 F. Supp. 986, 989 (D. Kan. 1993) (discussing false imprisonment under Kansas law). Ms. Cooper has failed to state a claim as a matter of law and we affirm the district court's grant of summary judgment as to all of Ms. Cooper's claims.

## III. ANALYSIS OF CASE NO. 98-3306

In a companion case, Dillard's raises two arguments in its effort to overturn the district court's determination that Ms. Hampton was entitled to attorney's fees and expenses in the amount of $141,192.50 pursuant to 42 U.S.C. § 1988. First, Dillard's disputes the district court's conclusion that Ms. Hampton is the "prevailing party" below. Second, Dillard's contends that Ms. Hampton received fees for unrelated and unsuccessful state law and § 1981 claims that were dismissed by the district court. We review the district court's award of attorney's fees and expenses for an abuse of discretion.    See Jane L. v. Bangerter  , 61 F.3d 1505, 1509 (10th Cir. 1996). For the reasons set forth below, we affirm the district court's award.

As to the first argument, because we have determined above that Ms. Hampton prevailed below on her § 1981 claim based upon her rights under the coupon, no further discussion is required. As to the unrelated and/or dismissed claims, Dillard's contends that fees incurred and costs spent in connection with Ms. Hampton's state law false imprisonment claim and Ms. Hampton's dismissed § 1981 claim, as well as Ms. Cooper's dismissed claims, should not be awarded. We disagree.

> If claims are related, failure on some claims should not preclude full recovery if plaintiff achieves success on a significant, interrelated claim. "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."

-53-

Id. at 1512 (quoting Hensley v. Eckerhart, 461 U.S. 424, 440 (1983)). Rather, a court should focus on whether the party "'succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" Hensley, 461 U.S. at 433 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).

Here, all of the claims in this case were very similar and stemmed from the same set of facts. "There was . . . one bundle of evidence and there was substantial success for the Plaintiff." Tidwell v. Fort Howard Corp., 989 F.2d 406, 412 (10th Cir. 1993). Any consequent fee reduction would be a difficult and unjust division of the hours expended on a claim-by-claim basis. See Hensley, 461 U.S. at 435 ("Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."). In Tidwell, we refused to allow a district court to reduce attorney's fees for a plaintiff who prevailed on an Equal Pay Act claim but failed on her Title VII and state law claims. See Tidwell, 989 F.2d at 412-13. We concluded that, instead of following a claim-by-claim success basis, under § 1988 the focus should be on the "significance of the overall relief obtained by [the] plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435; see also Zuchel v. City & County of Denver, 997 F.2d 730, 744 (10th Cir. 1993) ("[T]he Supreme Court has made clear that when, as here, two

-54-

claims are interrelated and the plaintiff obtains excellent results on one of those claims, a fully compensatory fee should usually be awarded.").  Here, it is undisputed that Ms. Hampton "has obtained excellent results" and as such, her "attorney[s] should recover a fully compensatory fee."        Hensley , 461 U.S. at 435. The district court's award of attorney's fees and expenses was well within its discretion.

## IV. CONCLUSION

For the reasons stated above we AFFIRM the district court's denial of Dillard's motion for judgment as a matter of law and motion for a new trial; we AFFIRM the district court's award of compensatory and punitive damages; we AFFIRM the district court's grant of summary judgment dismissing Ms. Cooper's claims; and we AFFIRM the district court's award of attorney's fees to Ms. Hampton.

Nos. 98-3011, 98-3261, 98-3306,     **Hampton v. Dillard Department Stores, Inc.**

**ANDERSON** , Circuit Judge, dissenting:


I agree with the majority opinion that the district court correctly dismissed Ms. Cooper's claims against Dillard.  However, because I believe that no § 1981 violation occurred in connection with Ms. Hampton's interaction with Dillard employees either, I would reverse the district court's denial of Dillard's motion for judgment as a matter of law and overturn the jury verdict in favor of Ms. Hampton.

I realize that we do not lightly overturn jury verdicts.  We may only do so if "there is no legally sufficient evidentiary basis . . . with respect to a claim." Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.    , 82 F.3d 1533, 1546 (10th Cir. 1996).  I believe Dillard has met that burden in this case.  I therefore respectfully dissent.

I assume for the sake of argument that the coupon is a benefit or privilege of Ms. Hampton's contractual relationship with Dillard.  Bearing in mind that § 1981 requires purposeful and discriminatory conduct, there is absolutely       no evidence that Mr. Wilson intentionally interfered with her redemption of that coupon when he approached her and Ms. Cooper, based upon probable cause to suspect that Ms. Cooper had shoplifted, and asked to look in Ms. Hampton's bag at a location near the store exit.

Indeed, there is no evidence that, when Mr. Wilson approached Ms. Hampton and Ms. Cooper and asked to examine the shopping bag, he even knew that they were redeeming fragrance coupons. When questioned about the incident at trial, Mr. Wilson testified as follows:

> Q: What did you think Paula Hampton and Demetria Cooper were doing when you approached them?
> A: They were getting ready to exit the Dillard's store to go out into the mall.
> Q: Okay. Did you notice that they were speaking with a cosmetic associate or a fragrance consultant when you approached the two ladies?
> A: No, I did not.
> Q: Did you knowingly prevent Paula Hampton from receiving a free cologne sample?
> A: No, I did not.
> Q: Did you intend to interfere with Paula Hampton obtaining a free sample of cologne on April 5th, 1996?
> A: No.
> Q: Did you have any desire to prevent Paula Hampton from obtaining a free sample of cologne on April 5th, 1996?
> A: No, I did not.
> Q: Did Ms. Hampton ever tell you that you interfered with her receiving a free sample of cologne on that date, April 5th, 1996?
> A: No, she did not.

Wilson test., Dillard App. Vol. 3 at 634. Plaintiffs produced no—absolutely zero—evidence to refute Mr. Wilson's testimony on that point and there is nothing in this record showing that he intended to interfere with their redemption of the fragrance coupons. And while the majority correctly notes that credibility determinations are within the jury's province, I note that the district court, in

- 2 -

concluding Mr. Wilson had probable cause to suspect plaintiffs of shoplifting, specifically stated that plaintiffs "cite no evidence which seriously calls into question . . . Wilson's credibility."     Hampton v. Dillard Dep't Stores, Inc.   , 985 F. Supp. 1055, 1061 (D. Kan. 1997).  Nothing in Ms. Hampton's or Ms. Cooper's testimony remotely suggests that Mr. Wilson's conduct towards them indicated an intention to prevent either plaintiff from redeeming the fragrance coupons.  All the evidence in this case points one way only:  that Mr. Wilson's interference with Ms. Hampton's redemption of her fragrance coupon was purely fortuitous, incidental and completely collateral to the only thing Mr. Wilson intentionally did—i.e., stop and question Ms. Hampton and Ms. Cooper briefly before they left the store because he had probable cause to believe one of them had shoplifted merchandise.

My conclusion is further supported by the fact that there is no evidence that either Mr. Wilson's or plaintiffs' conduct, or Ms. Hampton's damages arising from her encounter with Mr. Wilson, would have been different in any way had Ms. Hampton already received her fragrance sample.  There is no evidence that anything at all in this case would have been different had Mr. Wilson intercepted plaintiffs before, during or after they redeemed their fragrance coupons.  In other words, all the evidence indicates that it was the wrongful accusation of shoplifting, not the denial of her free fragrance sample, which caused Ms.

Hampton's alleged injuries. But § 1981 does not provide a remedy for the wrongful accusation of shoplifting, absent some interference with a contract benefit.

Further, the interference with the contract benefit (the fragrance coupon in this case) must be racially motivated. The majority acknowledges that discriminatory surveillance, while reprehensible, is not itself actionable under § 1981. Thus, to succeed on her § 1981 action in this case, Ms. Hampton must prove that Mr. Wilson's interference with her redemption of the fragrance coupon was itself racially motivated. My review of the record reveals no legally sufficient evidence of such racial motivation in Mr. Wilson's interaction with Ms. Hampton. Even if the original surveillance of plaintiffs was race-based, any claim that Mr. Wilson's stop and questioning of them was race-based is utterly inconsistent with the district court's specific finding, amply supported by the evidence in this case, that Mr. Wilson had probable cause to stop and question them. The existence of probable cause was a wholly sufficient reason to stop the plaintiffs. [1]

---

[1]Indeed, there is no evidence that Dillard security personnel, or Mr. Wilson, treated white customers about whom they had probable cause to suspect shoplifting any differently than they treated black customers.

- 4 -

Additionally, there was no evidence surrounding the particulars of the stop that suggests Mr. Wilson stopped and questioned plaintiffs on the basis of race. There is no evidence that Mr. Wilson made any racially derogatory remarks or acted or conducted himself in any way which suggested that he was preventing plaintiffs from redeeming their fragrance coupons because they were African-American. There is no evidence that he had ever said or done anything suggesting he was racist or treated African-Americans differently from white customers. Indeed, there is no evidence that he handled this particular investigation into shoplifting any differently from any other shoplifting investigation involving any other store patrons, of any racial background. Ms. Hampton herself testified that she had frequently shopped at Dillard, had made numerous purchases there without incident, and there was absolutely no evidence that Dillard in any way had ever discouraged her, or wished to discourage her, from patronizing its store.

In sum, Ms. Hampton's § 1981 claim hangs on the thread that the free fragrance coupon given to her following her purchase was a benefit of her contractual relationship with Dillard, and that Mr. Wilson, intentionally and with discriminatory animus, interfered with her redemption of that coupon. Because the evidence in this case clearly demonstrates that any interference by Mr. Wilson with Ms. Hampton's coupon redemption was completely unintentional, accidental,

and in no way based upon her race, but only resulted from the fortuity that the fragrance counter was near a store exit, I would find that there is no legally sufficient evidence supporting the jury's verdict in favor of Ms. Hampton.