**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 1, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES BARFIELD AND CHRIS
BARFIELD,

      Plaintiffs-Appellants,

  v.

COMMERCE BANK, N.A.,

      Defendant-Appellee.

No. 06-3087

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 05-CV-2218-MLB)**

---

Lawrence W. Williamson, Jr., Shores, Williamson and Ohaebosim, LLC, Wichita, Kansas for Plaintiffs-Appellants.

Charles W. German and Joselyn Verschelden, Rouse Hendricks German May PC, Kansas City, Missouri for Defendant-Appellee.

---

Before **KELLY**, **McCONNELL**, and **HOLMES**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

    Chris Barfield, an African-American man, entered a Commerce Bank branch in Wichita, Kansas, and requested change for a $50 bill. He was refused change on the ground that he was not an account-holder. The next day, Chris

Barfield's father, James Barfield, asked a white friend, John Polson, to make the same request from the bank. Mr. Polson was given change, and the teller never asked whether he held an account with the bank. A few minutes later, James Barfield entered the bank, asked for change for a $100 bill, and was told that he would not be given change unless he was an account-holder.

James Barfield then enlisted the help of a white news reporter and his African-American colleague. The two men, separately, visited the bank to request change. The African-American man was asked whether he was an account holder, and the white man was not.

The Barfields filed suit under 42 U.S.C. § 1981, alleging racial discrimination in the impairment of the ability to contract. The Bank moved to dismiss for failure to state a claim. While that motion was pending, the two sides engaged in extended mediation and negotiation, which ultimately failed. During that period, the Barfields moved for class certification and to amend their complaint to include a claim under Title VI of the Civil Rights Act of 1964. The judge denied both plaintiffs' motions and granted the defendant's motion to dismiss. The Barfields timely appealed.

I.

Originally enacted in the wake of the Civil War, Section 1981(a) states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to *make and enforce contracts*, to sue, be parties, give evidence, and to the full and equal benefit of all laws and

-2-

proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other.

42 U.S.C. § 1981(a) (emphasis added). As part of the Civil Rights Act of 1991, Congress added part b to the statute: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). The purpose of part b was to expand the statute to encompass "all phases and incidents of the contractual relationship." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 302, 308 (1994).

Section 1981 claims are subject to a three-part test. The claimant must demonstrate: "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001). Only the third prong is at issue here.

All courts to have addressed the issue have held that a customer's offer to do business in a retail setting qualifies as a "phase[] and incident[] of the contractual relationship" under § 1981. In *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862 (6th Cir. 2001), the Sixth Circuit upheld a § 1981 claim where an

African-American customer, ready to make a purchase, was accused of shoplifting and removed from the store:

> we have no trouble concluding that [the appellant] made herself available to enter into a contractual relationship for services ordinarily provided by Wal-Mart: the record reflects that she had selected merchandise to purchase, had the means to complete the transaction, and would, in fact, have completed her purchase had she not been asked to leave the store.

*Id.* at 874. The Fifth Circuit has written that "when a merchant denies service or outright refuses to engage in business with a consumer attempting to contract with the merchant, that is a violation of § 1981." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 290 (5th Cir. 2004). *See also Green v. Dillard's*, ___ F.3d ___, 2007 WL 1012941, *5 (8th Cir. Apr. 5, 2007) ("Under § 1981 contract formation begins and the statutory protections are triggered once a customer has made some tangible attempt to contract . . . ." (internal quotation marks omitted)); *Watkins v. Lovley Dev., Inc.*, No. Civ. 04-211-B-H, 2005 WL 2746664 (D. Me. Oct. 24, 2005) (finding a valid § 1981 claim when a customer attempted to make a purchase at Dunkin Donuts but was refused service); *Henderson v. Jewel Food Stores, Inc.*, No. 96C3666, 1996 WL 617165 (N.D. Ill. Oct. 23, 1996) (finding a valid § 1981 claim when a defendant had initiated but not completed a purchase); *Shen v. A&P Food Stores*, No. 93CV1184(FB), 1995 WL 728416 (E.D. N.Y. Nov. 21, 1995) (finding a valid § 1981 claim after Chinese customers attempted to purchase apple juice and were refused); *Washington v. Duty Free Shoppers, Ltd.*, 710 F.Supp. 1288, 1289-90 (N.D. Cal. 1988) (finding a valid § 1981 claim when

-4-

African-American customers were stopped after entering a duty-free shop and asked for their passports but white customers were not).

The question, then, is whether the Barfields' proposal to exchange money at a bank is a contract offer in the same way as an offer to purchase doughnuts or apple juice. The claim made by the appellees, and accepted by the district court, is that the Barfields' proposed exchange was not a contract because it involved no consideration: "The bank would not have received any benefit or incurred a detriment if it had agreed to change the Barfields' bills." App. at 56. That reasoning, however, departs in several significant ways from our understanding of contract law.

To determine the contours of a contract, we look to state common law. *Hampton*, 247 F.3d at 1104; 42 U.S.C. § 1988(a). Under Kansas law:

> A contract must be supported by consideration in order to be enforceable. *State ex rel. Ludwick v. Bryant*, 697 P.2d 858 (1985); *Mitchell v. Miller*, 8 P.3d 26 (2000). 'Consideration is defined as some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other.' 17A Am.Jur.2d, Contracts § 113, p. 129. A promise is without consideration when the promise is given by one party to another without anything being bargained for and given in exchange for it. 2 Corbin on Contracts § 5.20 (rev. ed.1995).

*Varney Bus. Servs., Inc. v. Pottroff*, 59 P.3d 1003, 1014 (Kan. 2002). *See also French v. French*, 167 P.2d 305, 331 (Kan. 1946) (noting that "inconvenience to the promisee" is valid consideration).

In the most straightforward sense, the transaction proposed by the Barfields was a contract of exchange: they would give up something of value (a large-denomination bill) in exchange for something they valued more (smaller-denomination bills). It is hard to see why this is not a contract. If two boys exchange marbles, their transaction is a contract, even if it is hard for outsiders to fathom why either preferred the one or the other. Consideration does not need to have a quantifiable financial value:

> [T]he legal sufficiency of a consideration for a promise [does not] depend upon the comparative economic value of the consideration and of what is promised in return, for the parties are deemed to be the best judges of the bargains entered into. . . . Where a party contracts for the performance of an act which will afford him pleasure, gratify his ambition, please his fancy, or express his appreciation of a service another has rendered him, his estimate of value must be left undisturbed . . . .

*In re Shirk's Estate*, 350 P.2d 1, 10 (Kan. 1960).

The Bank, however, argues that the proposed exchange was not a contract because it received no remuneration for performing the service of bill exchange. In other words, rather than view the transaction as an exchange of one thing for another, the Bank urges us to treat the transaction as a gratuitous service provided by the Bank, for no consideration. We cannot regard the Bank's provision of bill exchange services as "gratuitous" in any legal sense. Profit-making establishments often offer to engage in transactions with no immediate gain, or even at a loss, as a means of inducing customers to engage in other transactions that are more lucrative; such offers may nonetheless be contractual, and they do

-6-

not lack consideration. *See Idbeis v. Wichita Surgical Specialists, P.A.*, 112 P.3d 81, 90 (Kan. 2005) (holding that unquantifiable consideration, such as an employee's goodwill and professional contacts, is adequate to sustain a contract). If, as is alleged in the complaint, the Bank effectively extends bill exchange services to persons of one race and not the other, that is sufficient to come within the ambit of § 1981.

Appellee relies heavily on a part of this Court's holding in *Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001). That case involved two individuals—an aunt and a niece—shopping together at a department store. *Id*. at 1099. After the aunt, Ms. Hampton, made a purchase, a store clerk offered each of the two women a coupon for a free fragrance sample. *Id*. at 1100. The women went to the fragrance counter and were in the process of redeeming their coupons when they were stopped by a security guard, who suspected them of shoplifting. *Id*. The guard searched Ms. Hampton's bag and found no stolen merchandise; the women, after verbally expressing their displeasure, left the store without renewing their attempts to obtain fragrance samples. *Id*.

They brought suit in federal court alleging interference with contractual rights under § 1981. Although the district court allowed Ms. Hampton's § 1981 claim to proceed to the jury and this Court upheld the jury verdict in her favor, the district court dismissed the claim of her niece, Ms. Cooper, on summary

judgment, and this Court affirmed. Appellee suggests that our affirmance of summary judgment against Ms. Cooper stands for the broad proposition that gratuitous offers do not constitute contracts within the meaning of Section 1981, and argues that because the Bank's service of providing change was gratuitous, any racial discrimination with respect to that service would fall outside the ambit of the statute.

Appellee reads *Hampton* too broadly. *Hampton* did not establish any sweeping limitations on the coverage of Section 1981. Rather, *Hampton* was based on a specific finding that the coupon in question in that case was a contract benefit valid only upon purchase of merchandise. *Id*. at 1104-05. Because Ms. Cooper's aunt made a purchase, "she completed the invited performance in accordance with the terms of the offer" and thus had a valid contractual right to the coupon and its attendant benefits. *Id* at 1104. In contrast, Ms. Cooper never "ma[de] or attempt[ed] to make a purchase at Dillard's," *id*. at 1118, and thus she had no right to the contractual benefit. *Hampton* thus stands for the sensible proposition that a customer who fails to comply with a store's contractual terms cannot then claim that subsequent conduct by the store's employees interfered with her contractual right.

Instead of holding, as the Bank asserts, that offers of free merchandise can never constitute contracts under § 1981, *Hampton* reserves that question for another day. *Id*. at 1105. However, its consideration of the issue in dicta supports

-8-

the conclusion we come to today. In describing the coupon, the *Hampton* Court noted that a retail establishment's offer of a free service or sample in fact could constitute a contract within the meaning of Section 1981. The establishment receives a benefit from such offers because "to sample those products, the customer would traverse the store, perhaps eyeing other merchandise for purchase." *Id*. at 1105.

We therefore reverse the district court's dismissal of the Barfield's Section 1981 claim.

## II.

The Barfields moved to amend their complaint on November 5, 2005, seeking to add class allegations. The federal rules provide that leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). We review a denial of leave to amend a complaint for abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Unlike the original complaint, which contained specific factual allegations, the new allegations included only generalized conclusions, alleging that the bank had:

a. Den[ied] qualified African-Americans the opportunity to open checking accounts;
b. Den[ied] qualified African-Americans the opportunity to open saving's [sic] accounts;
c. Den[ied] qualified African-Americans home loans;
d. Den[ied] qualified African-Americans small business loans;

e. Refus[ed] to cash checks drawn on Commerce Bank accounts presented by African-Americans;

f. Refus[ed] to exchanging [sic] currency of African-Americans;

g. Refus[ed] to cash cashier's checks presented by African-Americans; and

h. Den[ied] qualified African-Americans personal loans.

App. at 26. The district court noted that "[t]he Barfields have not . . . asserted any actual facts to support these allegations, such as the identities of the individuals who were denied services, the dates on which these events occurred, etc. Further, the pleading contains no allegations that the Barfields were denied any of these additional services." *Id*. at 59.

The Federal Rules of Civil Procedure require a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard, known as "notice pleading," is intended to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although we "do not require a claimant to set out in detail the facts upon which he bases his claim," *id*., we do require enough specificity for the defendant to be able to respond to the allegations. As Judge Friendly has noted, Rule 8 requires more than a statement that the defendant has violated the statute in question: "[a] mere allegation that defendants violated the antitrust laws as to a particular plaintiff and commodity[, or that] a defendant made an undescribed contract with the plaintiff and breached it, or that a defendant owns a car and injured plaintiff by

-10-

driving it negligently" is not sufficient to meet the notice pleading requirements. *Klebanow v. N.Y. Produce Exch.*, 344 F.2d 294, 299 (2d Cir. 1965).

Because the plaintiffs' proposed amended claim "furnishes not the slightest clue as to what conduct by the defendants is claimed to" violate federal law, *id.*, it leaves defendants "without fair notice as to the grounds upon which plaintiffs' . . . allegation rests and . . . in no position to produce a responsive pleading," *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1388 (10th Cir. 1980). As the amendment makes out no valid new complaint, we hold that the district court did not abuse its discretion in denying leave to amend.

### III.

We **REVERSE** the district court's ruling on the motion to dismiss, **AFFIRM** the denial of permission to amend the complaint, and **REMAND** for further proceedings in accordance with this opinion.