[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-14020

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 29, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-21074-CV-JEM

VALERIE KINNON,

Plaintiff-Appellant,

versus

ARCOUB, GOPMAN & ASSOCIATES, INC.,
a Florida Corporation,
d.b.a. Flora's Pizzaria of Miami, Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 29, 2007)**

Before BIRCH, FAY and CUDAHY,* Circuit Judges.

---

* Honorable Richard D. Cudahy, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

BIRCH, Circuit Judge:

At issue before us is the application of 42 U.S.C. § 1981 to a claim for discrimination arising out of a verbal contract for the delivery of food. Plaintiff-appellant Valerie Kinnon ("Kinnon") appeals from the district court's grant of summary judgment in favor of Defendant-appellee Judith Gopman. Kinnon contends that she was subject to racially motivated discrimination at the hands of Gopman, in the form of excessive delivery changes and tardy delivery, and racist, threatening telephone calls from Gopman after Kinnon refused delivery of the food. The district court granted summary judgment in favor of the defendant. We AFFIRM.

## I. BACKGROUND

The relevant record evidence, viewed in the light most favorable to Kinnon, is as follows. Kinnon is an African-American female who works as a project director at a non-profit organization in Miami. On the morning of 21 January 2005, Kinnon's supervisor asked Kinnon to order lunch for a staff meeting. Kinnon decided to order pizza from Flora's Pizzaria, and at approximately 11:45 a.m., Kinnon called Flora's and placed an order for delivery. Kinnon spoke with Flora's manager, Judith Gopman, and explained that she was ordering food for a staff meeting that was to begin at 12:00 p.m. Gopman told Kinnon that Flora's did

2

not usually deliver to the address given by Kinnon, but she offered to do so for an additional charge of $5.00, to which Kinnon agreed. Kinnon gave her personal mobile telephone number to Gopman, for use in the event Flora's needed to contact Kinnon.

At 1:30 p.m., approximately one hour and forty five minutes after Kinnon placed the order, Kinnon still had not received the food. She called Flora's to inquire about the delivery, and was told that it would arrive within five minutes. At approximately 2:00 p.m., the food still had not arrived, and Kinnon and her coworkers left the office to eat lunch at a restaurant. Kinnon did not call Flora's to cancel the order, and the delivery driver arrived shortly after Kinnon and her coworkers left the office to eat elsewhere. An employee who had stayed behind called Kinnon and told her the pizza had arrived, and Kinnon responded that the pizza was no longer needed. The employee told the driver the pizza was not needed, and sent the driver away without paying for the food.

Almost immediately after the driver was sent away without payment, and while Kinnon was eating lunch out of the office at a restaurant, Gopman began calling Kinnon in an attempt to obtain payment for the food. At 2:09 p.m., Gopman called Kinnon and left a voice message stating "Here's a real blessed

3

voice message for you, Valerie.  This is Ju . . . ."[1]  R2-68, Exh. 7 at 1.  Shortly

thereafter, Gopman called Kinnon again and told Kinnon that she did "not know

who [she was] dealing with," that Gopman was a member of "one of the most

important families in Dade County," and that she would "get [Kinnon] fired" and

"make [her] lose [her] benefits."  R2-69 at 9.  After Kinnon ended the

conversation, Gopman called back, and this time spoke to Kinnon's supervisor.

Kinnon's supervisor recounted that Gopman stated "you don't know who you are

messing with, you people think you can get away with this, by the end of the day

you are going to lose your jobs, you are going to lose your benefits, you have

messed with the wrong person."  R2-68, Exh. 13 at 11.  At approximately 2:32

p.m., Gopman called again, this time leaving a voice message stating:

> [S]o funny . . . [a] nigger trying to sound important.  When I'm
> finished with you, you're not gonna look like yourself.  We can't even
> resell the pizzas because your pathetic people, the people you work
> with, touched the food.  I can't wait to find you.  You don't know who
> you're dealing with.  We're like the old fashioned kind of Italian
> restaurant people.  It's gonna be beautiful.  Can't wait to find you, you
> piece of shit nigger.  Nigger bitch.

R2-68, Exh. 7 at 1.  After leaving this message, Gopman continued to call Kinnon,

leaving additional messages of similar character.

Kinnon brought suit under 42 U.S.C. § 1981 against Gopman, and the

---

[1] Kinnon contends that Gopman's message was a reference to Kinnon's voice mail greeting, which tells callers to have a "blessed day."  Appellant's Br. at 11.

4

district court granted summary judgment in favor of the defendant. Relying on Domino's Pizza, Inc. v. McDonald, the court first found that Kinnon was acting as an agent for either her employer or her supervisor when she placed the delivery order with Flora's, and that as an agent she had no contractual rights under the food order and therefore could not maintain an action under § 1981. 546 U.S. 470, 126 S. Ct. 1246, 1249 (2006) (agent could not maintain § 1981 action on basis of contract under which he had no rights).

The court also found that, even if Kinnon had contractual rights, she had failed to state a claim under § 1981. The court did not address the calls Gopman made to Kinnon in an attempt to collect payment after the delivery was refused, explaining that, because they occurred after the delivery was refused, the calls constituted post-contractual activity and were therefore outside the purview of § 1981. Rather, the court analyzed only whether Kinnon's allegations regarding the delayed delivery and the $5.00 surcharge were sufficient to state a claim under § 1981. Finding no direct evidence of discrimination, the court turned to the issue of circumstantial evidence of discrimination.

The court acknowledged that our circuit has not articulated a prima facie test to apply in § 1981 cases involving commercial establishments, as opposed to employment cases, and, after reviewing several prima facie tests applied by district

5

courts in our circuit, the court selected the test applied in <u>Jackson v. Waffle House,</u> <u>Inc.</u>, 413 F. Supp. 2d 1338, 1361 (N.D. Ga. 2006). That test requires that plaintiffs identify similarly situated white customers who received more favorable treatment than the plaintiffs. <u>See</u> <u>id.</u> Because Kinnon could not identify any such comparators, the district court held she could not make out a <u>prima</u> <u>facie</u> case of discrimination, and granted Gopman's motion for summary judgment. The court also stated that Kinnon could not prevail even if she had established a <u>prima</u> <u>facie</u> case of discrimination, as the defendant had offered a nondiscriminatory reason for their actions, and Kinnon had not demonstrated that the reason was pretextual. Kinnon appeals.

## II. DISCUSSION

A. <u>Standard of Review</u>

"We review the district court's grant of summary judgment <u>de</u> <u>novo</u>, applying the same legal standards that bound the district court, and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." <u>Cruz v. Publix Super Markets, Inc.</u>, 428 F.3d 1379, 1382 (11th Cir. 2005) (citation and internal quotation omitted). "Summary judgment is appropriate when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" <u>Id.</u> (quoting Fed. R. Civ. P. 56(c)).

B.  Whether Kinnon Had Rights Under the Contract at Issue

To state a claim under § 1981, a plaintiff must identify "an impaired 'contractual relationship' . . . under which the plaintiff has rights." Domino's Pizza, 546 U.S. at __, 126 S. Ct. at 1249 (quoting 42 U.S.C. § 1981(b)) (footnote omitted).  In Domino's Pizza, the president of a corporation brought suit under § 1981 against Domino's, arguing that Domino's had breached a contract with his company because of his race. Id. at 1248.  The plaintiff alleged that in doing so, Domino's interfered with his right to make contracts on behalf of his principal, citing § 1981's protection of the right to "make and enforce" contracts. Id.  The Supreme Court held that § 1981 does not protect an agent's right to negotiate a contract on behalf of a principal, but rather applies only where the plaintiff has rights under the contract at issue. Id. at 1249.

In the present case, the district court held that, because Kinnon acted at the request of her supervisor when she placed the delivery order with Flora's, Kinnon acted only as an agent, and therefore did not have rights under the contract.  The court found that, therefore, under Domino's Pizza, Kinnon could not state a claim under § 1981.

This case is readily distinguishable from Domino's Pizza.  Here, unlike the plaintiff in Domino's Pizza, Kinnon did not indicate to Flora's that she was acting

7

on behalf of a principal, and did not identify any principal. Accordingly, Kinnon was at the very least acting as an agent for an undisclosed principal. See Robinson & St. John Adver. & Pub. Relations, Inc. v. Lane, 557 So. 2d 908, 909-10 (Fla. 1st DCA 1990); Van D. Costas, Inc. v. Rosenberg, 432 So. 2d 656, 658 (Fla. 2d DCA 1983). Under Florida law, an agent who makes a contract on behalf of an undisclosed principal is a party to the contract. Lane, 557 So. 2d at 910 ("In order for an agent to avoid personal liability on a contract negotiated [on] his principal's behalf, he must disclose not only that he is an agent but also the identity of his principal, regardless of whether the third person might have known that the agent was acting in a representative capacity."); Van D. Costas, 432 So. 2d at 658 ("Unless otherwise agreed, a person purporting to make a contract with another for a partially disclosed principal is a party to the contract."). See also RESTATEMENT (THIRD) OF AGENCY § 6.02 ("When an agent acting with actual or apparent authority makes a contract on behalf of an unidentified principal . . . the agent is a party to the contract unless the agent and the third party agree otherwise.") Because Kinnon was either not acting as an agent, or acting as an agent on behalf of an undisclosed principal when she ordered food from Flora's, Kinnon was a party to the contract, and is not barred by Domino's Pizza from proceeding under § 1981. See id.

8

C.   Whether Kinnon has Created a Genuine Issue of Material Fact as to Each Element of a Cause of Action Under 42 U.S.C. § 1981

The elements of a cause of action under § 1981 are "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute."[2] Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1270 (11th Cir. 2004) (citation omitted). Thus, to survive summary judgment, Kinnon must identify a genuine issue of material fact as to each element. There is no dispute that Kinnon is a member of a racial minority. Moreover, Kinnon has presented evidence that Gopman referred to her using the highly offensive racial slur "nigger," which, if true, constitutes direct evidence of discriminatory intent. See, e.g., Merrit v. Dillard Paper Co., 120 F.3d 1181, 1189-90 (11th Cir. 1997) (collecting Eleventh Circuit cases in which racial slurs were

_____

[2] The relevant provisions of 42 U.S.C. § 1981 state:

(a) Statement of equal rights

All persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

held to constitute direct evidence of discriminatory intent); Green v. Dillards, Inc., 483 F.3d 533, 540 (8th Cir. 2007) (stating, in § 1981 commercial establishment context, that "calling customers 'niggers' is direct evidence of discrimination"); Brooks v. Collis Foods, Inc., 365 F. Supp. 2d 1342, 1359 (N.D. Ga. 2005) (recognizing, in § 1981 commercial establishment context, "the level of racial animus" present when individuals are "subjected to racial slurs, expletives or name-calling"). Accordingly, Kinnon has created a genuine issue of material fact as to the second element of her § 1981 claim, and only the third element, which requires that the discrimination concern an activity enumerated in § 1981, is at issue.

Though we have previously addressed § 1981 claims in the employment context, see, e.g., BellSouth Telecomms., 372 F.3d 1250; Hall v. Ala. Ass'n of Sch. Bds., 326 F.3d 1157 (11th Cir. 2003) (per curiam), there exists scant authority in our circuit applying § 1981 to claims brought by customers against commercial establishments. We are persuaded, however, by the Fifth Circuit's approach in Arguello v. Conoco, Inc., which involved a § 1981 claim brought by a customer of a convenience store alleging discrimination arising out of a retail transaction. 330 F.3d 355 (5th Cir. 2003). We agree with the Fifth Circuit that "[t]here is a significant distinction . . . between employment agreements and retail transactions"

for the purposes of § 1981. Id. at 360.

In Arguello, the plaintiff and her father, both of whom were Hispanic, entered a gas station to pay for gasoline and purchase beer. Id. at 356-57. When Arguello approached the counter, the clerk treated her rudely, but eventually Arguello completed the purchase. Id. Arguello's father was upset at the way Arguello had been treated, however, and left without making his purchase. Id. at 357. At that point, the clerk began to shout obscenities at Arguello and made racially derogatory comments. Id. After Arguello and her father left the store, the clerk began shouting racist remarks over the intercom system, and when Arguello's father attempted to enter the store to determine the clerk's name, the clerk locked him out of the store. Id. The Fifth Circuit recognized that the first two elements of a § 1981 claim, the plaintiff's minority status and the defendant's discriminatory intent, were present. Id. at 358. As to the third element, however, the court found that Arguello successfully completed her transaction and was not actually denied the ability to engage in any contractual activity, and therefore could not establish a § 1981 claim. Id. at 358-60. The court also stated that discriminatory conduct that occurred after the transaction at issue was completed could not support a § 1981 claim. Id. at 360-61.

Here, Kinnon argues that she has adduced sufficient evidence to establish a §

1981 claim, because Gopman's discriminatory conduct arose from Gopman's efforts to enforce contractual rights, which is within the scope of § 1981's language protecting the right to "make and enforce" contracts. We disagree with this analysis. Section 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process. Rather, "in the retail context, the plaintiff must demonstrate the loss of an actual . . . contract interest." Id. at 358 (quotation omitted). Kinnon has not introduced evidence showing that "[she] was actually denied the ability either to make, perform, enforce, modify, or terminate a contract" on account of Gopman's conduct. See id. at 359 n.5. Kinnon successfully entered into a verbal contract with Flora's for the delivery of pizza, and when the delivery was late, Kinnon successfully took steps to terminate the contract and ate out of the office at a restaurant. See Sinclair Refining Co. v. Butler, 172 So. 2d 499, 502 (Fla. 3d DCA 1965) (per curiam) (discussing termination of contract by abandonment); Kuharske v. Lake County Citrus Sales, 44 So. 2d 641, 643 (same). That Gopman sought to enforce putative contractual rights against Kinnon at the time the discrimination occurred is insufficient to support a § 1981 claim if Kinnon herself was not denied any of the rights enumerated in the statute. See Arguello, 330 F.3d at 359 n.5; see also Hampton v. Dillard Dept. Stores, Inc., 247 F.3d 1091, 1118 (10th Cir. 2001) ("We are aligned

12

with all the courts that have addressed the issue that there must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping." (citation omitted)). Because Kinnon's exercise of her contractual rights was not "in some way thwarted" by Gopman, she cannot succeed on her § 1981 claim. See Arguello, 330 F.3d at 359.

Moreover, here, as in Arguello, the discriminatory conduct occurred *after* the contract at issue had been terminated. See id. at 360. In the retail context, unlike the employment context, "the [contractual] relationship is based on a single, discrete transaction." Id. As a result, "there is no continuing contractual relationship" after that transaction has been terminated. Id. As the district court correctly observed, the contract at issue here was terminated before Gopman began her campaign of discriminatory telephone calls. As such, those telephone calls constituted post-contractual activity, and cannot form the basis of a § 1981 claim by Kinnon.[3]

---

[3] In Arguello, the court observed that in cases arising from discriminatory service in restaurants, some courts have permitted § 1981 actions based on activity that occurred after the completion of a transaction. 330 F.3d at 360-61 (citing McCaleb v. Pizza Hut of Am., Inc., 28 F. Supp. 2d 1043 (N.D. Ill. 1998); Charity v. Denny's, Inc., No. CIV A 98-0554, slip op. at 3 (E.D. La. July 26, 1999)). Yet unlike the restaurant cases discussed in Arguello, Kinnon's contract involved the delivery of food, rather than the consumption of food in a restaurant. As the Arguello court noted, "dining at a restaurant generally involves a contractual relationship that continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased." Id. We find that a contract for food delivery is analogous to a retail transaction for the purchase of any other good.

13

Kinnon also argues that the late delivery of the food and the $5 delivery surcharge were acts of racially motivated discrimination that occurred during the contractual relationship, and that she was thereby denied the ability "to enjoy the fruits of [the] contractual relationship" on the same terms as a white person. See id. at 359, n.5. To succeed on this claim, Kinnon must establish that the delivery charge and tardy delivery were motivated by racial animus. See BellSouth Telecomms, 372 F.3d 1270. The district court found that Kinnon could not demonstrate that the late delivery and surcharge were the result of discriminatory intent. The court held that, setting aside the telephone calls, which occurred after the termination of the contract, there was no direct evidence of discrimination, and Kinnon could not succeed in establishing circumstantial evidence of discrimination by making out a prima facie case.

To determine whether Kinnon could establish discriminatory intent via circumstantial evidence, the court attempted to apply the burden-shifting framework set out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 1824 (1973). Because our circuit has not articulated a prima facie test to apply in § 1981 claims arising out of retail transactions, the district court applied the test used by the court in Jackson v. Waffle House, 413 F. Supp. 2d 1338. That test required Kinnon, in order to make

14

out a prima facie case, to identify non-minority customers of Flora's who received more favorable treatment. See id. at 1355 (requiring showing that "the defendant treated the plaintiff less favorably with regard to the allegedly discriminatory act than it treated other similarly-situated persons outside of the individual's protected class"). The court found that because Kinnon could not identify any similarly situated non-minority comparators, she could not make out a prima facie case.

We need not decide whether the particular formulation of the prima facie test applied by the district court was the appropriate test under the circumstances, however, because even if Kinnon did make out her prima facie case, she has not rebutted the legitimate, non-discriminatory reason offered by Gopman for the delivery surcharge and late delivery. See Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir. 1983). Specifically, Gopman argued that the $5 delivery charge was requested because the delivery address was outside Flora's usual delivery range, and that the food was late because the restaurant was busy at the time of the events in question. Because Kinnon has not introduced evidence to show that those reasons are pretextual, she cannot establish a presumption that the late delivery and surcharge were based on discriminatory intent. Id. Accordingly, she cannot make out a § 1981 claim on the basis of the delivery charge and delay.

### III. CONCLUSION

15

Because Kinnon was either not acting as an agent, or acting as an agent on behalf of an undisclosed principal when she ordered food from Flora's, the district court erred in holding that she had no contractual rights and was therefore barred from proceeding on her § 1981 claim. Yet because Kinnon has not created a genuine issue of material fact as to each element of a cause of action under § 1981, we nonetheless AFFIRM the district court's entry of summary judgment in favor of Gopman.