**MACEDONIA CHURCH, et al., Plaintiffs,**

v.

**LANCASTER HOTEL LIMITED PARTNERSHIP, Masspa Realty Corporation, and Fine Hotels Corp., Defendants.**

**Civil No. 3:05CV00153(AWT).**

United States District Court, D. Connecticut.

June 19, 2008.

David M. Cohen, Eric M. Higgins, Mary–Kate Smith, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, CT, for Plaintiffs.

Gerald L. Maatman, Jr., Michael A. Cox, Seyfarth, Shaw, Chicago, IL, Katherine E. Perrelli, Seyfarth Shaw, Boston, MA, for Defendants.

### RULING ON DEFENDANTS' RENEWED MOTION TO DISMISS

ALVIN W. THOMPSON, District Judge.

The defendants have renewed their motion to dismiss the plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction on the grounds that the individual plaintiffs lack standing. For the reasons set forth below, the defendants' motion to dismiss is being denied.

## I. BACKGROUND

On April 18, 2006, the defendants moved to dismiss the first amended complaint as to all plaintiffs, except for the four individual plaintiffs who visited the Lancaster Host Resort and Conference Center (the "Lancaster Host"), on the grounds that they lacked standing. With respect to Macedonia Church, the motion to dismiss was (1) granted in part as to the claims brought on its own behalf, without prejudice to filing an amended complaint identifying the injuries that the church itself suffered, (2) granted as to its claims for compensatory damages on behalf of its members, and (3) denied without prejudice as to its claims for equitable relief. (*See*

Ruling on Motion to Dismiss (Doc. No. 164)). With respect to the individual plaintiffs who did not visit the Lancaster Host, the court denied the motion to dismiss. In denying the defendants' motion with respect to those plaintiffs, the court stated:

> [T]he identity of the proposed parties to the contract between the plaintiffs and the defendants is not apparent from the record. Drawing all inferences in favor of the plaintiff, as is required at the motion to dismiss stage, the court cannot conclude that the individual plaintiffs would not have had any rights under the proposed contract.

(*Id.* at 7). At a status conference held on September 10, 2007, the court directed the plaintiffs to submit a proposed amended complaint to which the defendants would respond.

The plaintiffs have now supplemented their complaint with additional allegations. First, the plaintiffs clarified the injuries suffered by both Macedonia Church and the individual plaintiffs. Paragraph 2 of the proposed amended complaint now states:

> The plaintiff church seeks redress for the interference with its operations and mission resulting from the defendant's race-based refusal to honor an agreement for lodging made on behalf of its members. The individual plaintiffs seek redress for the injuries they suffered when, based upon their race and their affiliation with an African–American church, the defendants denied them accommodations on the same terms as white citizens.

(Def.'s Mem. (Doc. No. 173), Ex. B., Compl. ¶ 2). In addition, the plaintiffs have provided factual allegations to support their contention that the mission of Macedonia Church was frustrated by the denial of accommodations at the Lancaster Host. The mission of Macedonia Church included "developing and fostering the spiritual welfare of its members" (*Id.* at ¶ 10), "addressing issues surrounding racial injustice" (*Id.* at ¶ 11), and "further[ing] fellowship, congeniality, and congregational vitality" (*Id.* at ¶ 12). Finally, the plaintiffs have identified Macedonia Church, as opposed to the individual plaintiffs, as the party that attempted to enter into a contract with the Lancaster Host. The plaintiffs allege that "[e]ach member of the Plaintiff Class was ready, willing and able and had the specific intent to lodge at the Lancaster Host for that same weekend, at the agreed-upon rate negotiated by Macedonia Church through Merle Rumble." (*Id.* at ¶ 9). They also allege that the defendants "mailed two proposals for room reservations to Macedonia Church for the benefit of the Plaintiff Class," (*Id.* at 20), and that the defendants "sent a proposal letter to Macedonia Church care of Merle Rumble to reserve rooms for the Plaintiff Class." (*Id.* at 34). Paragraph 38 of the proposed amended complaint alleges:

> Macedonia Church was ready, willing and able to provide the Lancaster Host with the required further deposit to reserve the rooms for the Church group and to enter into an agreement with the Lancaster Host for the benefit of the Plaintiff Class. In that connection, Macedonia Church expected and intended to enter into a contract with the defendants for rooms at the Lancaster Host for the Plaintiff Class, to assume financial responsibility and to make full payment for the reservations in order to guarantee the availability of space for the Plaintiff Class.

(*Id.* at ¶ 38). Paragraph 39 alleges that Merle Rumble was told that "a contract would be sent right away to Macedonia Church to guarantee space for the Plaintiff Class." (*Id.* at ¶ 39). However, the defendants "failed to furnish to Macedonia Church ... the defendants' customary

form seeking a list of names of the group members who intended to stay at the Lancaster Host pursuant to the reservation," (*id.* at ¶ 39), and "[a]fter having recognized the Plaintiff Class members' right to stay at the Lancaster Host based on its promise to Macedonia Church, the defendants failed to satisfy their obligation to provide them with rooms for the weekend of July 9–10, 2004" (*Id.* at ¶ 42).

Based on the plaintiffs' proposed amendments to their complaint, the defendants no longer contest that Macedonia Church had general standing to assert claims on its own behalf. However, the defendants do contend that the individual plaintiffs lack standing because they were not parties to the proposed contract with the Lancaster Host. In addition, the defendants argue that Macedonia Church lacks associational standing because the plaintiffs cannot show that the members of the church would have standing to sue in their own right.

## II. LEGAL STANDARD

A claim is properly dismissed for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the claim. *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996). On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005). When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside the pleadings. *See Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000).

The standards for dismissal under Fed R. Civ. P. 12(b)(1) and 12(b)(6) are identical. *See Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.2003). When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). The plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Stores Co.,* 34 F.Supp.2d 130, 131 (D.Conn.1999), quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683). In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Sam-*

*uels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

## III. DISCUSSION

 The individual plaintiffs contend that their rights under § 1981 were violated when they were denied accommodations at the Lancaster Host. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The phrase "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In order to state a claim under § 1981, a plaintiff must establish that "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute...." *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993).

Relying on the Supreme Court decision in *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006), the defendants argue that the individual plaintiffs lack standing because they did not have rights under the proposed contractual relationship between Macedonia Church and the Lancaster Host. In *McDonald,* the Court held that "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Id.* at 476. The Court stated that "[s]ection 1981

plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.* at 480. Thus, in *McDonald,* the Court concluded that the sole shareholder and president of a corporation lacked standing to bring a § 1981 claim based on the breach of a contract between the corporation and Domino's. Based on the allegations in the proposed amended complaint, the defendants in this case contend that the proposed parties to the contract were Macedonia Church and the Lancaster Host and that individual plaintiffs who may have negotiated with the Lancaster Host were merely agents of Macedonia Church who lack standing to bring a § 1981 claim.

The plaintiffs argue that (1) both Macedonia Church *and* the individual plaintiffs were proposed parties to the contract, or (2) in the alternative, the individual plaintiffs were third-party beneficiaries of the proposed contract between Macedonia Church and the Lancaster Host. The court finds the plaintiffs' first argument unpersuasive. The plaintiffs allege that the proposals for room reservations were sent to Macedonia Church and that the rate for those rooms was negotiated by Macedonia Church. The plaintiffs also allege in paragraph 38 of the proposed amended complaint that:

> Macedonia Church was ready, willing and able to provide the Lancaster Host with the required further deposit to reserve the rooms for the Church group and to enter into an agreement with the Lancaster Host for the benefit of the Plaintiff Class. In that connection, Macedonia Church expected and intended to enter into a contract with the defendants for rooms at the Lancaster Host for the Plaintiff Class, to assume financial responsibility and to make full payment for the reservations in order to

guarantee the availability of space for the Plaintiff Class.

(Compl. ¶ 38). The allegations in the proposed amended complaint make it clear that Macedonia Church, rather than the individual plaintiffs, was the proposed party to the contract with the Lancaster Host.

The plaintiffs contend that, when the allegations of the proposed amended complaint are construed in a light most favorable to the plaintiffs, it is unclear whether the individual plaintiffs were parties to the proposed contract and that the motion to dismiss must be denied on that ground. In support of their argument, the plaintiffs cite *Dawes v. Motel 6 Operating L.P.*, 2006 WL 276928 (E.D.Wash.2006), a case in which an interracial couple attempted to reserve a motel room. In *Dawes*, the court denied the defendant's motion for summary judgment with respect to the black female plaintiff's § 1981 claim, finding that genuine issues of material fact existed as to whether she was a party to the rental agreement. Although the defendant motel claimed that the room was rented only to the white male plaintiff for single occupancy use, the plaintiffs claimed that the female plaintiff paid for the motel room, participated in the registration process, and was a known occupant of the room. Unlike in *Dawes*, the plaintiffs' own allegations in this case make it clear that Macedonia Church was the only proposed party to the contract, and that to the extent individual plaintiffs participated in the process to reserve the rooms, they were acting as agents for Macedonia Church.[1]

However, the fact that the individual plaintiffs would not have been parties to the contract does not mean that they would not have had any rights under the proposed contract between Macedonia Church and the Lancaster Host. In *Mc-Donald*, although the Supreme Court did not decide whether third-party beneficiaries to a contract have sufficient rights under a contract to assert a § 1981 claim, the Court stated that "[w]e say 'under which the plaintiff has rights' rather than 'to which the plaintiff is a party' because we do not mean to exclude the possibility that a third-party intended beneficiary of a contract may have rights under § 1981. Neither do we mean to affirm that possibility." *McDonald*, 546 U.S. at 476, n. 3, 126 S.Ct. 1246 (internal citation omitted). The Second Circuit has recognized that third-party intended beneficiaries of a contract may have rights under § 1981. In *Olzman v. Lake Hills Swim Club, Inc.*, a case in which black guests alleged that they were excluded from a swimming club in violation of § 1981, the Second Circuit stated that "entry conditioned on payment of a fee thereby became a contract between the guest and the club (or between the member and the club to which the black guest would be a third-party beneficiary able to enforce the contract)." *Olzman*, 495 F.2d 1333, 1339 (2d Cir.1974). Several other circuit courts have also recognized that third-party beneficiaries to contracts have rights under § 1981. *See, e.g., Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 436 (4th Cir.2006); *Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091, 1118–19 (10th Cir. 2001); *Jones v. Local 520, Intern. Union of Operating Engineers*, 603 F.2d 664, 665–66 (7th Cir.1979).

■ In order to determine whether plaintiffs were third-party beneficiaries to a contract for purposes of a § 1981 claim, courts generally look to the law of the forum state. Section 1988(a) provides:

---

1. (*See* Compl. ¶ 33) ("At all relevant times thereafter, Merle Rumble acted as the Church representative to secure lodging for the Plaintiff Class and the individual Representative Plaintiffs, and she was assisted from time to time by other Church staff or volunteers.").

The jurisdiction in civil and criminal matters conferred on the district courts ... for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, *the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held,* so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C. § 1988(a) (emphasis added); *see also Burnett v. Grattan,* 468 U.S. 42, 47–48, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). Because there is no federal common law of contracts for § 1981 claims, the court looks to the law of the forum state. *See Kinnon v. Arcoub, Gopman, & Associates, Inc.,* 490 F.3d 886, 890–91 (11th Cir.2007) (applying Florida law); *Barfield v. Commerce Bank, N.A.,* 484 F.3d 1276, 1278 (10th Cir.2007) (applying Kansas law); *Judie v. Hamilton,* 872 F.2d 919, 922–23 (9th Cir. 1989) (applying Washington law). Several courts have applied the law of the forum state in determining whether a party has standing to assert rights under a contract as a third-party beneficiary in a § 1981 claim. *See Denny,* 456 F.3d at 436 (applying Virginia law); *Munnings v. Fedex Ground Package Systems, Inc.,* 2008 WL 1744779, *3 (M.D.Fla.2008) (applying Florida law); *Mack v. AAA Mid–Atlantic, Inc.,* 511 F.Supp.2d 539, 545 (applying Pennsylvania law). Thus, both parties have properly relied upon Connecticut law as controlling in this case.

In Connecticut, the law regarding the creation of contract rights is well-settled.

[T]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and ... that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties ... Although we explained that it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary we emphasized that the only way a contract could create a direct obligation between a promisor and a third party beneficiary would have to be, under our rule, because the parties to the contract so intended.

*Dow & Condon, Inc. v. Brookfield Development Corp.,* 266 Conn. 572, 580–81, 833 A.2d 908 (2003) (citations and internal quotation marks omitted).[2] Applying this

---

**2.** *See also* 2 Restatement (Second) Contracts § 302 (1981)("(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."); *id.* at § 304 ("A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty.")

test, the plaintiffs have sufficiently alleged that the individual plaintiffs were third-party beneficiaries of the proposed contract between Macedonia Church and the Lancaster Host. The plaintiffs allege that Macedonia Church intended to enter into a contract with the Lancaster Host "for the benefit of the Plaintiff Class." (Compl. ¶ 38). Macedonia Church attempted to reserve rooms at the Lancaster Host to provide the individual plaintiffs with lodging for a church-sponsored weekend retreat. Therefore, the proposed contract was an agreement pursuant to which the Lancaster Host would have assumed a direct obligation to individual plaintiffs, i.e. the obligation to provide them with accommodations during the retreat. For these reasons, the individual plaintiffs would have been third-party beneficiaries of the proposed contract.

The conclusion that the individual plaintiffs would have been third party-beneficiaries of the proposed contract is further supported by the Fourth Circuit's decision in *Denny*. In *Denny*, a woman had purchased a gift package for her mother from a beauty salon and day spa. Both the mother and the daughter brought § 1981 claims, alleging that the owner of the salon refused to style the mother's hair because she was black. In concluding that the mother had standing to bring suit under § 1981, the Fourth Circuit held that the plaintiffs had demonstrated a contractual relationship between the daughter and the salon which gave the mother a specific contractual right, and that "this was a third-party beneficiary contract" under Virginia law. *Denny*, 456 F.3d at 436. Here, the individual plaintiffs have alleged that they would have had specific contractual rights under the proposed contractual relationship between Macedonia Church and the Lancaster Host, and therefore have standing to bring suit as third-party beneficiaries.

The defendants argue that the individual plaintiffs cannot be considered third-party beneficiaries of the proposed contract because (1) there was no contract executed between Macedonia Church and the Lancaster Host, and (2) the defendants never knew the identities of the individual plaintiffs. The court finds both arguments unpersuasive.

With respect to the defendants' first argument, an executed contract is not required in order for plaintiffs to bring a § 1981 claim. Section 1981 is designed to protect the right to make, as well as to enforce, contracts from impairment by racial discrimination. As the Supreme Court has stated, "[s]uch a contractual relationship need not already exist, because § 1981 protects the would-be contractor along with those who already have made contracts." *McDonald*, 546 U.S. at 476, 126 S.Ct. 1246. If a contract had to be executed before a plaintiff could bring a § 1981 claim, as the defendants contend, the entire purpose of § 1981 would be frustrated.

At least one court has held that the absence of a fully-executed contract did not bar plaintiffs from bringing a § 1981 claim as third-party beneficiaries to a proposed contractual relationship. In *Miales v. McDonald's Restaurants of Colorado, Inc.*, 438 F.Supp.2d 1297 (D.Colo.2006), an African–American woman and her four children brought claims under § 1981, alleging they suffered racial discrimination when they attempted to place an order at a McDonald's restaurant. The defendants argued that the children lacked standing because there was no evidence that they ever intended to enter into a contract themselves. The court held that "if any purchase was intended at all, Ms. Miales clearly intended to buy food for her children. Accordingly, summary judgment is inappropriate on the children's § 1981

claims because they were third-party beneficiaries." *Miales,* 438 F.Supp.2d at 1300. Here, based on the allegations in the proposed amended complaint, Macedonia Church intended to reserve rooms at the Lancaster Host for no reason other than occupancy by the individual plaintiffs, and that was understood by both Macedonia Church and the Lancaster Host.

The defendants note that the court in *Kirt v. Fashion Bug # 3253, Inc.,* 479 F.Supp.2d 938, 955 (N.D.Iowa.2007) questioned the decision in *Miales.* The court in *Kirt* noted that the plaintiff in *Miales* voluntarily left the restaurant after allegedly suffering racial discrimination and was not expressly denied service. The court stated:

> [U]nlike the court in *Miales,* this court believes that the Tenth Circuit Court of Appeals would, at a minimum, require proof that the plaintiff's right to services was actually interfered with by the allegedly discriminatory conduct, and would not permit a claim where the plaintiff shows only generally that discriminatory conduct occurred and that she declined to proceed further with any transaction.

*Kirt,* at 955. The court in *Kirt* held that there was no interference with the plaintiff's right to make a contract when she could have completed the transaction despite the defendant's conduct, but chose not to do so. Thus, although the court in *Kirt* disagreed with *Miales* on the scope of the provision in § 1981 relating to interference with the right to "make" a contract, it did not disagree with the reasoning of *Miales* on any issues material to the instant motion. Here, the plaintiffs specifically allege that the Lancaster Host interfered with the ability of Macedonia Church to contract for rooms by failing to send a contract to the church, failing to communicate that there was any problem with the church's reservations, and eventually claiming that there were not enough rooms available to accommodate the plaintiffs.

For similar reasons, the defendants' reliance upon *Kinnon v. Arcoub, Gopman, & Associates, Inc.,* 490 F.3d 886 (11th Cir. 2007), is misplaced. In *Kinnon,* an African–American customer who requested a delivery from a pizza restaurant for her employer's staff meeting brought a § 1981 action, alleging racial discrimination in connection with the late delivery of the pizza and the delivery surcharge. Although the court concluded that the plaintiff was a party to the contract under Florida law because she was acting as an agent for an undisclosed principal, the court held that the plaintiff could not state a claim under § 1981 because she failed to introduce any evidence to show that she was denied the ability to make or enforce a contract as a result of the defendant's conduct. The court noted that the plaintiff terminated her verbal contract with the defendant when the delivery arrived late and that any allegedly discriminatory conduct occurred after the contract had been terminated. Summary judgment was granted in *Kinnon,* as it was in *Kirt,* because there was insufficient evidence that the defendant interfered with any contract or proposed contract between the plaintiff and the defendant. Neither *Kinnon* nor *Kirt* stand for the proposition that, in such a case, the absence of an executed contract bars the plaintiffs from bringing a § 1981 action.

The defendants' second argument is the individual plaintiffs could not have been intended beneficiaries of the proposed contractual relationship between Macedonia Church and the Lancaster Host because they never knew the identities of the individual plaintiffs. The defendants argue that, at most, the individual plaintiffs were foreseeable or incidental beneficiaries who cannot be afforded third-party beneficiary

status. In *Grigerik v. Sharpe*, 247 Conn. 293, 721 A.2d 526 (1998), the Connecticut Supreme Court reaffirmed that the intent of both parties determines whether a plaintiff is a third-party beneficiary of a contract. The court stated that "the fact that a person is a foreseeable beneficiary of a contract is not sufficient for him to claim rights as a third party beneficiary." *Grigerik*, 247 Conn. at 317–18, 721 A.2d 526. The court explained that allowing "foreseeable" beneficiaries to be afforded third-party beneficiary status would "would significantly reduce contracting parties' ability to control, through the negotiated exchange of promises and consideration, the scope of their contractual duties and obligations." *Id.* at 318, 721 A.2d 526.[3] However, here the individual plaintiffs were not merely foreseeable beneficiaries of the proposed contract between Macedonia Church and the Lancaster Host; they were the intended beneficiaries. The rooms were being reserved so the individual plaintiffs, not some group of individuals to be identified at some point in the future, could occupy them during Macedonia Church's retreat, and under the proposed contract, the Lancaster Host would been obligated to provide accommo-dations to the individual plaintiffs for the weekend of the church's retreat.[4]

The defendants' reliance on *Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091 (10th Cir.2001), to support their contention that the individual plaintiffs were merely foreseeable or incidental beneficiaries without rights under the proposed contract is also misplaced. In *Hampton*, an African–American woman and her niece brought a § 1981 action after they were allegedly stopped by a department store security guard as they were attempting to redeem free fragrance sample coupons they received after the woman made a purchase. Although the Tenth Circuit affirmed a jury verdict in favor of the woman who made the purchase, the court upheld the district court's grant of summary judgment against her niece. Because her niece did not make a purchase at the store, the court held that her receipt of the coupon did not establish a contractual relationship between her and the store. The court also held that the niece was not a third-party beneficiary of the contract between the store and the customer who made the purchase because "an incidental benefit is not enough to confer contractual rights under the contract; there must also be consideration for the contract." *Hamp-*

---

**3.** The Connecticut Supreme Court has explained the rationale for not permitting "foreseeable beneficiaries" to claim third-party beneficiary status as follows: "The requirement that both contracting parties must intend to confer enforceable rights in a third party rests, in part at least, on the policy of certainty in enforcing contracts. That is, each party to a contract is entitled to know the scope of his or her obligations thereunder. That necessarily includes the range of potential third persons who may enforce the terms of the contract. Rooting the range of potential third parties in the intention of both parties, rather than in the intent of just one of the parties, is a sensible way of minimizing the risk that a contracting party will be held liable to one whom he neither knew, nor legitimately could be held to know, would

ultimately be his contract obligee." *Dow & Condon, Inc.*, 266 Conn. at 581, 833 A.2d 908.

**4.** Moreover, the plaintiffs allege that the only reason the defendants did not know the identities of the individual plaintiffs was because they failed to furnish Macedonia Church with their "customary form seeking a list of names of the group members who intended to stay at the Lancaster Host pursuant to the reservation." (Compl. ¶ 39). As the Supreme Court noted in *McDonald*, "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship ... so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *McDonald*, 546 U.S. at 476, 126 S.Ct. 1246.

*ton,* 247 F.3d at 1119. Although the niece derived some benefit from the contract between the store and the woman who made the purchase, the benefit she received was not contemplated by the contract, and therefore, she had no right to sue to enforce it.

Although the parties do not cite *Mack v. AAA Mid–Atlantic, Inc.,* 511 F.Supp.2d 539 (E.D.Pa.2007), that case provides another illustration of the distinction between intended and incidental beneficiaries of a contract in the context of a § 1981 claim. In *Mack,* the district court granted summary judgment against an African–American plaintiff who brought a § 1981 claim after allegedly suffering discrimination by an automobile club and the towing company which refused to transport him. Although the plaintiff's white fiancée had a contractual relationship with the automobile club, the plaintiff did not. In holding that the plaintiff was not a third-party beneficiary of the contract between his fiancée and the automobile club, the court stated:

> As part of her AAA membership, [the fiancée] is entitled to emergency road service for any vehicle in which she is present, whether she is the driver or merely a passenger. This will naturally create incidental beneficiaries, because the driver of a vehicle in which [the fiancée] is traveling may receive towing services under [the fiancée's] policy. But such incidental benefits do not create contractual rights, and these incidental beneficiaries are not themselves independently entitled to any services from AAA.

*Mack,* 511 F.Supp.2d at 545 (citation omitted).

*Hampton* and *Mack* are distinguishable from *Denny* and *Miales,* for the same reason they are distinguishable from the instant case. *Denny* and *Miales* were both cases in which a third person was clearly the intended beneficiary of the contract. When the daughter in *Denny* purchased a gift package from the beauty salon and day spa, it was evident from the context that the beauty salon and day spa and the daughter contemplated that a third person would receive the salon and hair treatment and thus benefit from the contract. When the mother in *Miales* was at was at McDonald's with her four children and tried to order food, it was evident from the context that the children would receive something to eat and thus benefit from her contract with McDonald's. Here, when Macedonia Church attempted to contract for accommodations with the Lancaster Host, it was apparent from the context that the individual plaintiffs would be given rooms at the hotel for their personal use during the retreat and thus benefit from the contract. To the court it appears that the facts here provide as strong a basis for a finding of third-party beneficiary status as do the facts in *Denny* and provide stronger support for such a finding than do the facts in *Miales.* By way of contrast, when the woman in *Hampton* received free fragrance sample coupons in connection with her purchase, it was not evident from the context that some third person would benefit from her purchase; nor was it evident from the context in *Mack* at the time the plaintiff's fiancée purchased her AAA membership that the plaintiff there or any other third person would benefit from that AAA membership.

Based the plaintiffs' allegations in the proposed amended complaint, Macedonia Church attempted to enter into an agreement with the Lancaster Host, pursuant to which the Lancaster Host would provide accommodations for the individual plaintiffs during the weekend of the church's retreat. The benefit the individual plaintiffs would have received if the contract were executed, i.e. lodging provided by the Lancaster Host, was clearly contemplated

**186**

by the parties to the proposed contract. There was no point to there being a contract otherwise. Therefore, the individual plaintiffs were intended beneficiaries, not merely incidental beneficiaries, of the proposed contract between Macedonia Church and the Lancaster Host, and as third-beneficiaries of that contract, they have a right to sue upon it under § 1981.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Renewed Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. No. 170) is hereby DENIED.

It is so ordered.